## STATE OF IOWA;

## DES MOINES, JUNE TERM, A. D. 1864.

#### IN THE NINETEENTH YEAR OF THE STATE.

---

#### PRESENT:

Hon. GEORGE G. WRIGHT, CHIEF JUSTICE.
" RALPH P. LOWE,
" JOHN F. DILLON, �months JUDGES.
" CHESTER C. COLE,

---

## WILSON et al. v. HORR et al.

1. MORTGAGE TO HINDER AND DELAY CREDITORS. A mortgage of property executed by a debtor to his creditor, in good faith, to secure a debt, may be valid, notwithstanding it operates to hinder and delay other creditors; but a mortgage executed with the intention to hinder and delay, is fraudulent and void.

2. PRAYER FOR GENERAL RELIEF. Under a prayer for general relief, the complainant may be entitled to a decree consistent with the case made by the allegations of the bill, but not to one including and covering matters not therein referred to, and as to which the respondents have never properly had their day in Court.

3. FRAUD: DISTRIBUTION OF PROPERTY TO CREDITORS. A creditor who is a party to a fraudulent mortgage executed by his debtor, to hinder and delay other creditors, is not entitled to come in *pari passu* with the other creditors for a distributive share out of the property which was the subject of the fraud.

4. SAME: GRANTEE CHARGEABLE WITH INTEREST. The grantee of property sold and received for the purpose of hindering and delaying creditors, is chargeable with interest on the value thereof from the time of the conversion of the same to his own use.

*Appeal from Des Moines District Court.*

MONDAY, APRIL 4, 1864.

CREDITOR'S BILL. Decree for complainants, and respondents appeal.

*J. C. & B. J. Hall and C. Ben Darwin,* for appellants, cited the following authorities: *Arnold* v. *Grimes & Chapman,* 2 Iowa, 3; *Mansfield* v. *Watson,* Id., 111; *Cheavete et al.* v. *Mason,* 4 G. Greene, 231; *Adams* v. *Foley et al.,* 4 Iowa, 54; *Miller* v. *Bryan,* 3 Id., 58; *De France* v. *Howard et al.,* 4 Id., 529; 1 Barb. Ch., 105; *Adams* v. *Foley et al.,* 4 Iowa, 51; Code of 1851, § 2388 (Revision of 1860, § 3978); Code of 1851, § 2390; § 4, art. 1, Constitution; Story's Eq. Jur., § 1529; 2 Maddock, ch. 437; 1 Barb. Ch. Pr., 257, 260; 2 Fonbl., 460, 463; 2 Barb. Ch. Pr., 293; *Riggs* v. *Murray,* 2 Johns. Ch. Cas., 565; 4 Johns. Ch., 687–691; 2 Paige, 566; 1 Id., 637; 1 Am. L. Cas., 528; 15 John., 571; *Wakeman* v. *Grover,* 4 Paige, 24.

*Crocker & Smythe and D. Rorer,* for the appellees, cited the following authorities: *Burrows et al* v. *Lehndorff,* 8 Iowa, 96; 1 Greenl. Ev., 111; 2 Pet., 354; *De France* v. *Howard et*

*al.*, 4 Iowa, 524; *McDermutt et al.* v. *Strong et al.*, 4 John. Ch., 687 ; *Corning* v. *White*, 2 Paige Ch., 566 ; *Edmeston* v. *Lyde*, 1 Id., 637 ; 1 Am. L.C., 55 ; *Miers & Coulson* v. *The Zanesville and Maysville Turnpike Company*, 13 Ohio, 197 ; *Parmelee* v. *Egan et al.*, 7 Paige, 610 ; *Weed et al.* v. *Pierce*, 9 Cow., 722 ; 2 Kent's Com., 553 ; 1 Am. L. C., 528 ; *Shepard* v. *Ford*, 10 Iowa, 502 ; *Blakemore and Lawes* v. *Allen*, Id., 550 ; *Falconer* v. *Freeman*, 4 Sand. Ch., 565 ; *Doolittle* v. *Bridgman and Partridge*, 1 G. Greene, 265 ; *Postlewait et al.* v. *Howes et al.*, 3 Iowa, 365, 383 ; *O'Brien* v. *Coulter*, 2 Blackf., 421–423 ; *Russell* v. *Clark's Executors*, 7 Cranch, 89 ; *McCalmont* v. *Lawrence*, 1 Blatch. C. C., 235.

WRIGHT, Ch. J.—Complainants ask to set aside a chattel mortgage made by Horr & Bonn to their co-respondent, Thul, to subject the property therein named to the payment of their debts; that said mortgage be decreed fraudulent and void as to creditors, and that said Thul be declared a trustee holding said property in trust for complainants, as the *bona fide* creditors of said mortgagors. Upon the issues made, and testimony submitted, some questions of fact and law are raised for our determination, which may be disposed of without much if any elaboration.

I. Was the chattel mortgage made with the intention to defraud, hinder, or delay the creditors of the mortgagors? And this inquiry extends to fraudulent intent or knowledge on the part of the mortgagee as well as the mortgagors. Conceding, as claimed by appellants, that the testimony of Horr & Bonn was properly admissible, and that their admissions or statements could not conclude or affect Thul, until the fraudulent combination, or a common fraudulent purpose was established, we are still of the opinion that the fraud alleged in the bill is sustained by the evidence, and that in the finding of the Chancellor, in this respect, there was no error. We are satisfied that the

amount named in the mortgage was much greater than what was honestly due Thul; that the mortgagors were insolvent, or contemplating insolvency; that complainants were largely the creditors of said Horr & Bonn, and that the intention was to thus place the property in the hands of Thul (the father-in-law of one of the partners), to be held by him, not to secure any debt; but out of the reach of attachments or executions in favor of other creditors. True it is that a debtor has a right, in good faith, to mortgage or sell a portion of his property to one of his creditors. It may be also true that any such sale may have the effect of hindering and delaying other creditors, and still it may not be void. And it is not void, for the reason that the element of an intention to defraud is wanting. When that intention, as in this instance, is present, then the instrument is void as to other creditors, and will be set aside at their instance, provided, of course, they are in such a position as to question its validity. (*Davenport* v. *Cummings*, *ante.*)

II. Was the Chancellor justified in making Thul liable for $1,000, the amount of book accounts received by him of Horr & Bonn? Under the circumstances, we think most clearly not. These accounts are not mentioned in the mortgage, nor is any reference made to, or claim based on them, in the bill. It is shown in the testimony that he received such accounts, but the bill does not charge him with any fraudulent act in connection with them, nor is he called upon to account for the same. Under such circumstances, the prayer for general relief did not entitle complainants to the relief thus granted. Under the prayer for general relief, complainants may be entitled to any relief consistent with the case made in their bill (there is no pretense that the other pleadings claim more), but not to a decree covering and including matters not referred to, and as to which respondents have never properly had their day

in Court. It would have been just as competent to have held fraudulent and void, and subjected to complainant's judgments, any other property held by Thul, whether purchased from his co-respondents or others, and whatever the circumstances attending such purchase. (*Pierce* v. *Wilson et al.*, 2 Iowa, 20).

III. The transaction between Thul and the mortgagors being fraudulent, is Thul entitled to come in *pari passu* with complainants for a distributive share of the property in his hands? In other words, if the mortgagors were in fact indebted to him in some amount, can he claim equitably to come in and share with these other creditors in the proportion that his real debt bears to the whole property included in the fraudulent transfer? To such a claim, it seems to us there are insuperable difficulties. In the first place, it may be suggested that he never has reduced his demand to judgment, nor in any manner placed himself in a position to claim the reward which equity, as well as law, awards to the diligent. Nor does the doctrine that "Equality is Equity," have any application. If it does, it must be upon the principle that as Thul had the property in his possession, and is not himself asking any affirmative relief, he may, so to speak, set off the amount of his claim against the proceeds of the property placed in his hands by the fraudulent mortgagors or grantors. But the effect of this would be, indirectly, if not directly, to give him all the benefit of a transaction, fraudulent in fact, which he would derive from one ever so honest. And here let it be remembered, that the mortgage is found to be void for fraud in fact. Under such circumstances, we are not aware that it has ever been held that the fraudulent creditor is entitled to come in *pari passu* with other *bona fide* creditors for a distributive share out of the property which is the subject of the fraud. If so, while he might not receive a premium for his violation of an express penal

statute, he would at least be recognized as having as clean hands, and entitled to the same protection, as the most honest creditor, and that too in a Court which, while it may not punish such violators of law, certainly will not disregard what is due to the diligent, whose consciences are untainted with fraud.

The case of *Riggs* v. *Murray* (2 John. Ch., 565; *S. C.*, 15 John., 571), differs from this in the important particular that there the allegation of actual fraud was "entirely destitute of foundation;" the case "was stripped of all imputation of actual fraud;" the fraud, if any, arose as matter of law, intrinsically from the deeds themselves. Being thus constructively fraudulent, they were voidable only, and could be confirmed. But, says THOMPSON, Ch. J. (15 John., 585), "a deed founded in actual and positive fraud, as being made under the influence of corrupt motives, and with intention to cheat creditors, may be considered void *ab initio*. The grantee in the deed may be considered *particeps criminis*, and is not permitted to deduce any right from an act founded in actual fraud." And we may remark, that as he can claim no right from his fraudulent act, he stands certainly in no better position than any other creditor having a simple debt against the fraudulent vendors, and it will not be pretended that such creditors could come in for a ratable proportion of the property.

IV. Is Thul properly chargeable with interest upon the property received by him, and converted to his own use under the fraudulent sale or mortgage? As to this, it seems to us there can be no question. He is not in the attitude of a trustee, agent or garnishee, holding funds. But if as agent or trustee, he nevertheless converted the property to his own use, instead of keeping it as funds belonging to the principal, he would be chargeable with interest. And as it appears that he did thus convert it, he may be treated as having wrongfully received and illegally

withheld money or property of the debtors, which should have been applied to the payment of complainant's debts, and interest should be allowed from the time he received the same. (*Greenly* v. *Hopkins*, 10 Wend., 96; *Wood* v. *Robbins*, 11 Mass., 504.) Not only so, but if he had acted *bona fide*, or without fraud or collusion, and had been restrained by the fact that the fund was in the custody of the law from paying it over, the case would have been different; for then he would not be liable. If, however, he converted the property to his own use, or so mixed it with his own as to form a part of his capital stock, the reason of the rule ceases, and interest should be charged. (*Adams* v. *Cordis*, 8 Pick., 260.)

We conclude, therefore, that so much of the decree below as relates to the book accounts was erroneous, and must be set aside, and that in all other respects it should stand affirmed; appellees paying the costs of this appeal.