JOHN LOW and SARAH BURNSIDE, Respondents *v.* JAMES PURDY, Appellant.

(GENERAL TERM, SEVENTH DISTRICT, SEPTEMBER, 1869.)

The heir's title to land is not divested by foreclosure sale under the statute (2 R. S., 545), without service of the notice of sale, on the personal representatives appointed upon the estate of the deceased mortgagor.

If a general guardian makes a purchase in his character as such, he presumptively uses his ward's funds therefor.

And if, on foreclosure sale of his ward's land, he purchases as general guardian, the effect is to merge and extinguish the mortgage, and he can obtain no title by so purchasing, which he can afterward convey without authority from a court of equity.

But if he can show the purchase to have been made with his own funds, he may stand as assignee of the mortgage against his ward until he is reimbursed. Per JOHNSON, J.

Upon recovery in an action for possession of land, interest on the value of each annual rent, which might have been obtained for the land, is allowable by way of damages.

THIS was an action to recover possession of land in Auburn, Cayuga county, and was tried before the court, and a jury, at the Cayuga county circuit.

The plaintiffs proved title, as heirs-at-law, of Dennis C. Low, an infant, deceased, whose title was derived as heir-at-law from Dennis S. Low, deceased, his father; also the issue

Low *v.* Purdy.

of letters of administration upon the estate of the latter, in Cayuga county, his place of residence at his decease ; also the annual value of the rents and profits of the land, above taxes and assessments, and the defendant's possession for some three years, was conceded.

The defendant gave in evidence, a mortgage of the premises, executed by the elder Low in his lifetime, and also certain affidavits and papers in proceedings for a statutory foreclosure thereof, taken during the lifetime of · Dennis C. Low, but after the decease of his father, by which it appeared, that notice of sale, in due form, had been served on the said Dennis C. Low, and also upon one Camp (admitted to have been, at the time, his general guardian), in season under the statute, to charge parties entitled to such notice. It further appeared from such proceedings, that a sale of the mortgaged property had been made pursuant to the notice, and the property purchased for the sum of $600 by Camp, as general guardian, he being the highest bidder therefor. The defendant also proved a conveyance of the premises, after the sale, by Camp "as general guardian of Dennis C. Low," for $550, to one Palmer, and several other intermediate conveyances from Palmer and others, to one Maillot, who conveyed to him (defendant) ; and that he took the title, paying a full consideration, and without knowledge or suspicion of any defect in the title, and after having caused searches to be made against his grantor.

The court directed a verdict for the plaintiffs, for possession of the land, and for rents and profits, and interest thereon, from the end of each year, to the time of the trial.

The defendant excepted, and the jury having rendered a verdict in accordance with the directions of the court, appealed

*H. V. Howland,* for the appellant.

*H. L. Comstock,* for the respondent.

Present—E. D. Smith, Johnson, J. C. Smith and Dwight, JJ.

By the Court—Johnson, J.  Upon the undisputed facts of this case, I am clearly of the opinion that the defendant has no title to the premises in question, as against the heirs-at-law of Dennis C. Low.  The mortgage foreclosure and sale under which the defendant claims title were wholly unauthorized and void.  It was not a proceeding in accordance with the statute under which it was had.  The notice was not served upon any person entitled to a notice under the statute. It should have been upon the administrator of the deceased mortgagor.  Service upon the minor heir, and upon his guardian was a nullity, and no person could acquire any title by purchase at such a sale.  The statute is explicit.  The notice must be served within the time specified "upon the mortgagor or his personal representatives."  No other persons are entitled to notice under this proceeding, except subsequent grantees and incumbrancers.  Neither the heir nor his guardian is a proper party to such a proceeding, as no provision is made for service upon either, or for any notice to them or either of them whatever.  (Sess. Laws of 1844, chap. 346; *Cole* v. *Moffitt*, 20 Barb., 18; *Anderson* v. *Austin*, 34 id., 319; *King* v. *Duntz*, 11 id., 191; *Stanton* v. *Kline*, 16 id., 9; *Van Slyke* v. *Sheldon*, 9 id., 278; *Robinson* v. *Ryan*, 25 N. Y., 320.)  A statute authority by which one may be deprived of his estate must be strictly pursued or the proceeding will be void.  (*Bloom* v. *Burdick*, 1 Hill, 130.)

The personal representative mentioned in the statute was, at the time of the proceeding, the administrator, and there was no other person of that description.  The heir is not the personal representative of a deceased person under our statute unless he is made either executor or administrator.  Heirs and personal representatives are two separate and distinct classes of persons.  The sale was therefore, without jurisdiction and no right or title was acquired under it.

But had the sale been regular, under a notice duly pub-

lished and served upon the administrator, I do not see what right or title Camp, the general guardian of the minor heir of the mortgagor, acquired by virtue of his purchase. The affidavit of the person who made the sale, which is part of the pretended title papers, shows that he purchased, in his character of general guardian of his ward, who was the infant heir and owner of the estate. He did not purchase in his own personal right, but in his capacity and character of guardian. Upon the face of the proceeding the purchase was not for himself, but for another, and the title, if any could have vested in any one, by reason of the purchase, would have vested in the ward, and not in the agent or guardian. The ward, however, being already heir, and owner of the estate in fee, could gain nothing by a purchase at the mortgage sale of his own premises. The only effect of it as to him would be the payment and satisfaction of the mortgage, and the removal of the incumbrance from his estate. Having the inheritance, the mortgage would merge and become wholly extinguished. The guardian had no right to purchase his ward's land for his own benefit and advantage, and the law will not presume that he undertook or intended to do so, especially as the contrary appears on the face of the papers. Had he used his own funds in making the purchase for his ward, he might, I apprehend, have stood as assignee of the mortgage as against such ward until he could reimburse himself out of the estate. But there is no evidence that he did use his own funds, and the legal presumption is the other way. The law presumes, in the absence of proof to the contrary, that he used the funds of his ward. The bid at which the premises were struck off was, it appears, $600, while the amount claimed to be due at the first publication of the notice was only $144.82. This last amount, with the cost of advertising and selling added, was all the money actually used, as there does not appear to have been any other claim. The balance of the bid belonged to the ward, of course. The bid was probably made to the

amount of $600 on account of competition at the sale. In any event, therefore, Camp could only have held the mortgage for the amount actually paid to extinguish it, and it appears that he took possession of the premises, and held the same after his purchase up to the time of the sale and conveyance by him to Palmer in 1855, a period of between five and six years. The annual value of the rents and profits, over and above taxes and assessments was shown to be ninety-six dollars. The whole amount of rents and profits would be far greater than the amount due on the mortgage and the costs of foreclosure under the statute. As the case stands, therefore, the only right Camp had, at the time of his sale and conveyance to Palmer, was that of general guardian of the infant owner. As such guardian he had no power or authority to sell and convey the real estate of his ward. He could only sell and convey upon the express order and authority of this court in the exercise of its equitable powers, which there is no pretense he had obtained. The conveyance upon its face, shows that he conveyed as general guardian only, and in no other way. This conveyed no title whatever. (2 Kent Com., 228; *Genet* v. *Tallmadge*, 1 John. Ch., 561; *Field* v. *Schiefflin*, 7 id., 154; *White* v. *Parker*, 8 Barb., 52.) He might lease the real estate during the continuance of the relation between them, but had no power to alienate the fee. The defendant is, therefore, wholly without title, and the action to recover possession is well brought, and the plaintiff's right of recovery entirely clear. Camp had no color of title upon the records of the county, and no person could take a conveyance from him *bona fide* as owner of the fee. And every one deriving title through him was bound to take notice of his rights and powers as guardian. The only remaining question is, whether interest was properly allowed upon the annual rents and profits by way of damages. This admits of no doubt whatever. By statute the recovery of mesne profits in such cases is as though the action were assumpsit for use and occupation. (2 R. S., 311, § 53.) The compensation is to be adjusted as upon a contract for rent. (*Holmes* v. *Davis*,

19 N. Y., 488.) And in *Jackson* v. *Wood* (24 Wend., 443), which was a proceeding by suggestion for mesne profits in ejectment in the city of New York, it was expressly held, that interest might be computed upon quarter days, instead of the expiration of the year, as rents were there generally payable quarterly.

A new trial must therefore be denied and judgment ordered for the plaintiffs on the verdict.

New trial denied.