HENRY TAYLOR, Executor, etc., of DANIEL TAYLOR, deceased, Respondent, *v.* MELINDA TAYLOR et al., Administrators of JAMES TAYLOR, deceased, ALMIRA TAYLOR and MARTHA TAYLOR, infant heirs-at-law of JAMES TAYLOR, deceased, by WILLIAM E. BONHAM, their guardian, impleaded with JAMES H. WOOD, executor of CHAS. H. WILLIAMSON deceased, Appellants.

Where two, having contracted together for the purchase of land, partition it between them and possess accordingly, and one (the plaintiff's testator and devisor) dying in possession of his part, the other (the defendant) immediately entered upon it and occupied, claiming the whole,—*Held*, that each was, as against the other, entitled to the exclusive possession of the portion allotted to him, independently of the question whether either or both had against the vendor the right to the possession of any part of the lot *; held* further, therefore, that the defendant was liable to the plaintiff for the rents and profits of the half allotted to the plaintiff's testator.

Where a court of equity acquires jurisdiction for the purpose of compelling specific performance of a contract in reference to land, if it appear that an accounting between the parties of the rents and profits is proper, it will proceed to order such accounting, and to direct the payment by any one of the parties of the amount of such rents and profits found due from him.

Accordingly, in the case stated, the plaintiff having included in his complaint a prayer for specific performance of the contract by the vendor, for the enforcement of the partition between the vendees by mutual releases, and to recover the rents and profits of his testator's half during the occupation thereof by the defendant,—*Held*, that it was competent for the court, having found the plaintiff entitled to the *other* relief demanded also to give judgment against the defendant for such rents and profits.

In such an action, the defendant having died leaving children his heirs-at-law, who were made defendants by a supplemental complaint, merely alleging, in addition to the original allegations, the defendant's death and their heirship,—*Held*, that a personal judgment against such heirs for the rents and profits accruing after the death of the original defendant was unauthorized by the pleadings ; and further, that proof that " the widow (of the original defendant) and his children have it (the land) yet," did not support a finding that the infant heirs had received rents and profits subsequent to the death of their father.

The office of a bill of revivor, under the old equity practice, and of a supplemental complaint under the Code, stated by CHURCH, Ch. J.

(Argued January 26th, and decided February 3d, 1871.)

APPEAL from the late General Term of the Supreme Court, in the seventh judicial district, affirming a judgment for the plaintiff, directed at Special Term.

This action was originally brought against James Taylor and James H. Wood, executors of Charles A. Williamson, deceased. Taylor died pending the action, and his administrators and his heirs-at-law were made parties defendants, by supplemental complaint. The defendant, Wood, did not answer.

The action was tried at the June Special Term, in 1867, in Steuben county, by a judge without a jury.

The administrators of James Taylor appealed to the General Term from that part of the judgment by which the plaintiff recovered from the administrators the rents and profits of the premises while they were occupied by their intestate.

The two heirs-at-law appealed from that part of the judgment by which the plaintiff recovered from them $106.42 for rents and profits of the premises received by them after the death of their ancestor.

Many years previous to 1842 Daniel Taylor, the plaintiff's testator and devisor, held by contract from Charles A. Williamson the 100 acres of land described in the complaint, and the larger part of it had before that time been cleared and improved. He had failed to pay for the land, and the amount remaining due to Williamson in 1842 was $396.67.

In 1842 Daniel Taylor had become old and infirm, and he made verbal arrangement with his son, James Taylor, that James should take from Williamson a new contract for the whole lot; pay up for it the balance due at that time, and divide the land equally between the two.

In pursuance of this arrangement Daniel Taylor and his son, James, on the 15th October, 1842, went to the office of defendant, Wood, who was then agent for Williamson, and the contract set out in the complaint was made by which the land when paid for was to be conveyed by Williamson to James Taylor and his father, Daniel Taylor; and the pro-

vision in the contract to convey to both was put in by Wood to protect the rights of Daniel in the land.

The land, immediately after the date of the contract, was actually divided between James Taylor and his father; James taking the north half and his father the south half of the lot, and each continued to occupy separately his own half until the death of Daniel in December, 1853.

Daniel left a will, by which he substantially devised his share of the land to the plaintiff as his executor, and directed a sale of it for the purposes therein declared.

Immediately after the death of Daniel Taylor, James Taylor took possession of the south fifty acres, denying entirely the plaintiff's right under the will; claimed to hold it as his own, and received the rents and profits until his death on the 17th June, 1865. The rents and profits were worth from fifty dollars to $100 per year.

James Taylor completed his payment in October, 1855, and requested Wood to convey the whole land to him, which Wood declined for the reason that Daniel Taylor was entitled to one-half.

The complaint asked for a conveyance of the land, according to the rights of the parties, that plaintiff might have possession of his fifty acres, and that James might account for the rents and profits while he had the possession.

The supplemental complaint asked for the same relief, except so far as necessary to modify the same in view of a change of parties.

The judgment ordered such conveyance to the plaintiff and awarded to plaintiff the rents and profits against the administrators of James down to the time of his death, to be made of the assets coming to their hands to be administered, and against the heirs-at-law for the rents, after and between their ancestor's death and the time of the trial.

The evidence as to any occupation of the premises by the heirs-at-law and the finding of the judge on that point, are stated in the opinion of the court.

The General Term affirmed the judgment of the Special Term and the defendants appealed to this court from the same parts of the judgment as in their appeal to the General Term.

*George B. Bradley,* for the appellants, that the facts did not authorize any recovery of rents and profits, neither the plaintiff or his testator ever having had any title or right of possession, cited *Kellogg* v. *Kellogg* (6 Barb., 116); *Spencer* v. *Tobey* (22 Barb., 260); *Erwin* v. *Olmstead* (7 Cow., 229). That even should there be such right of recovery at law it could not be enforced in equity, he cited *Hatch* v. *Cobb* (4 John. Ch., 559); *Kempshall* v. *Stone* (5 John. Ch., 193, 195); *Clark* v. *L. and N. F. R. R. Co.* (18 Barb., 356); Story Eq. Jur., § 794; *Burhans* v. *Burhans* (2 Barb. Ch., 398, 410); *Leland* v. *Towsey* (6 Hill, 328); 19 N. Y., 488. Assuming that the plaintiff's testator and the defendant were tenants in common, no recovery could be had against the latter for the value of the use, but merely for the rents and profits actually received. (48 Barb., 327; *Hannan* v. *Osborn,* 4 Paige, 336; 40 Barb., 300; *Woolever* v. *Knapp,* 18 Barb., 265, 266.) If the defendant is held to have wrongfully intruded on the south half, then the recovery of the rents and profits against him is not of equitable cognizance, and at any rate must be limited to six years before the action. (*Jackson* v. *Wood,* 24 Wend., 443; *Budd* v. *Walker,* 9 Barb., 493; R. S., part 3, chap. 5, title 1, § 50.) The personal judgment against the infant heirs was erroneous. The supplemental complaint did not charge them, and the proof did not authorize the finding as to them. (*Sylvester* v. *Ralston,* 31 Barb., 286–289; *Beecher* v. *Crouse,* 19 Wend., 306–308; *Holmes* v. *Seely,* 17 Wend., 75; *Jackson* v. *Vredenburgh,* 1 John., 163; *Byrne* v. *Van Hoesen,* 5 John., 66; *Jackson* v. *De Walts,* 7 John., 157; *Field* v. *Schieffelin,* 7 John. Ch. R., 154; Code, § 12; 2 Barb. Ch. P., 36, 37, 44, 45, 51–56.)

*D. Rumsey,* for the respondent, as to the defendant's lia-

bility for rents and profits, cited *Cowing* v. *Howard* (46 Barb., 579); *Jackson* v. *Wood* (24 Wend., 443).

Church, Ch. J. By the terms of the contract with Williamson, James Taylor agreed to pay him the sum of $396.67, which was the balance due on the land according to a previous contract of purchase held by Daniel Taylor; and upon its payment the land was to be conveyed to James and Daniel Taylor, as tenants in common. This was in 1842, and the two Taylors then agreed upon a partition by which Daniel was to have the south and James the north half of the farm, and they entered into possession of their respective parts, and held the same in severalty until the death of Daniel in 1853. There was a balance due on the contract at this time which was paid by James soon after the commencement of the action, and the conveyance has not been made. Upon the death of Daniel, it is found that James took possession of the south fifty acres and continued in possession up to his death in 1865, and refused to recognize the rights of the plaintiff therein, under the will of Daniel. The legal effect of the execution of the contract and the transactions between the parties, constituted James and Daniel equitable owners of the land, as tenants in common; and by the parol partition, followed by the actual and continued possession of their respective portions as between themselves, they became the equitable owners in severalty of the portion respectively allotted to each, and Daniel held his part as against James free from any lien for the sum secured by the contract with Williamson. It was the duty of James to pay that sum, secure a conveyance to himself and Daniel, when they would both be bound to execute releases to consummate the title in accordance with the practical partition which they had made. The plaintiff is, therefore, clearly entitled to a conveyance of the south fifty acres. It is objected, however, that the plaintiff is not entitled to recover for the rents and profits of the land or for the use and occupation in this action, and several objections, mostly applicable to actions at law, are made to such recovery.

It is urged that, under the contract with Williamson, the Taylors were not entitled to possession of the premises, until the payment of the sum therein specified; that this sum was not paid until after the commencement of the action; that Daniel was not, therefore, entitled to the rents and profits; and that a recovery therefor would be foreign to the purposes of the action.

I cannot assent to this objection under the peculiar circumstances of this case. In the first place, it is worthy of notice that the contract is not an ordinary contract for the sale and purchase of land. The Taylors were in possession at the time of its execution, and one of them had been in possession for several years under a contract which it is fair to presume gave him the right to possession. This contract merely provided that, upon the payment of a specified sum by James Taylor, Williamson would convey the premises to him and Daniel Taylor. It must be assumed that the right to possession in the Taylors was recognized and acquiesced in by Williamson, by the circumstances existing and which are proper to be considered upon that question. It follows that, as against Williamson, the Taylors would be entitled to the possession of the land, under the contract. But if this was not so, as between themselves, it is clear that neither can urge this position against the right of possession of the other to the part which, by mutual agreement, each should occupy. James agreed that Daniel should enjoy and own the south fifty acres, and he would not be permitted to make a claim against his own agreement. Williamson has never made any claim to the use of the land and James was precluded from making any by the terms of his contract. As against all the world except Williamson, at all events, the right to the use and occupation of the south fifty acres, was as perfect in Daniel as if he had possessed an absolute estate in fee. James has actually had the use and occupation of the premises since 1853, and is liable for the value of it, or the rents and profits, in some form.

This was necessarily an equitable action to secure a con-

veyance from Williamson, and to enforce the equitable partition made between the parties; and in such an action, when the court obtains jurisdiction, it will proceed and grant relief for purposes of an account, and especially as in this case, when the remedy at law is inadequate, and the remedy in equity is more complete. (1 Story's Eq., §§ 64–69, pp. 456, 457, and cases cited.) Having adjudged that the representatives of Daniel were entitled to a conveyance of the south fifty acres, and to the rents and profits thereof, it was entirely competent for the court, in the exercise of its comprehensive equity powers, and as an incident to the principal relief granted, to compel James, who had wrongfully enjoyed them, to account for them. This was a legitimate sequence resulting from the decision of the principal question, and affected the same parties. The right to recover rents and profits does not depend upon the conventional relation of landlord and tenant. Whenever a party has received rents and profits belonging to another, he is bound to account for them; and when he is in a court of equity in respect to the title of the property out of which the rents and profits accrued, and the title is adjudged against him, the judgment would fall short of a complete determination of the controversy, if it did not award restitution, including the rents and profits down to the time of trial. Nor does the statute of limitations apply in such a case for the period pending the litigation. The defendant's intestate occupied the premises himself, and the rents and profits were properly shown in the first instance, by proving the value of the use and occupation. The court found that the defendant's intestate took and held possession in bad faith, and was chargeable with interest, and was not entitled to compensation for the value of the improvements made, in building fences and other improvements proper for the use and protection of the property. The interest was properly chargeable, and as to the improvements, it does not appear that they were of a permanent character, and temporary improvements necessary for the mere use of the premises would be for the benefit of the intestate himself, during

his occupation; but the expense of permanent improvements are not generally allowable to a person occupying his position as found by the court. The recovery for the conveyance of the south fifty acres, and against the administrators for rents and profits, must be sustained, as no error in law was committed in respect to them; but I am unable to discover any principle justifying a personal judgment against the infant defendants in this action. The action was revived against them as heirs of James Taylor, because upon his death his title descended to them, and against the administrators, as representatives of the personal assets. The supplemental complaint is a bill of revivor, and simply revived and continued the action pending at his death. It does not profess to bring in the heirs for the purpose of a personal judgment, and makes no personal claim againt them, and there is no allegation that they have received the rents and profits, and no prayer for judgment against them. They inherited this litigation, with all its liabilities augmented, as it is found, by the bad faith of their ancestor, but they are not in court charged with any strictly personal liabilities.

Under the old practice in equity, the death of a sole party was the usual if not the sole cause of the abatement of a suit. The suit was not regarded as dead, but in a state of suspended animation. (Story's Eq. Pl., § 354.) In such a bill it was only necessary to state how the plaintiff became entitled to revive, and to charge that the cause ought to be revived, and to stand in the same condition, with respect to the parties to the original bill, as it was at the time the abatement happened; and the sole question upon such a bill was, the competency of the parties to revive and the correctness of the form of the bill. (Id., § 374.) A bill of revivor merely reanimated the suspended pending controversy. If new interests arose after the commencement of the action, which made it necessary or proper to change or modify the original claim, the new parties necessary for this purpose were brought before the court by an original bill, in the nature of a supplemental bill. Such a bill "is properly applicable when new parties with

new interests, arising from events since the institution of the suit, are brought before the court." (Id., § 345.) "Such a bill must show the ground upon which the court ought to grant the benefit of the former suit, to or against the person who has become so entitled, and it must pray the decree of the court adapted to the case of the plaintiff in the new bill." (Id. § 353.)

The Code has provided for supplemental complaints in both classes of cases, substantially in accordance with the practice in the Court of Chancery. (Code, §§ 121, 177; 41 N. Y., 53.) It is a new cause of action. (7 How. Pr., 31; 14 Id., 71.) In this case no allegations were contained in the supplemental complaint designed to charge the infants with a personal claim, and no demand for such a judgment was made against them, nor was the question of their liability litigated upon the trial. The only evidence on the subject is from the plaintiff himself who, after testifying that James took possession and control of the land and retained it until his death, added, "*and his widow and children have it yet.*" This is very slight evidence, to say the least of it, to support the finding that the children "occupied the whole of said premises and received the rents and profits thereof" since the death of James. There was no evidence that the children had received any rents or profits, or had used and enjoyed the benefit of the occupation, nor that they had occupied the premises at all, but only that the widow and children "have it yet." This is not sufficient. The spirit of liberality which has extensively prevailed since the adoption of the Code, and which is uniformly invoked to induce courts to overlook defects and irregularities in legal proceedings, has never yet been carried to the extent of sustaining a judgment against a party without either allegations or proof, and a careful examination of the evidence has not impressed me with the propriety of doing it in this case. The judgment must be affirmed against the administrators with costs, and the personal judgment against the infant heirs reversed with costs.

All the judges concurring, except GROVER, J., who was for affirmance of the whole judgment.

Judgment in accordance with the opinion.