# Cases

# FOURTH DEPARTMENT

AT

# GENERAL TERM,

## January, 1889.

CONRAD LOOS AND OTHERS, PLAINTIFFS, AND ALBERT K. HISCOCK, ONE OF THE RECEIVERS, APPELLANTS, v. J. FORMAN WILKINSON, APPELLANT, IMPLEADED WITH OTHERS.

*When a fraudulent grantee of real estate, incumbered by mortgages, will not be allowed for payments made by him thereon — he is not entitled to be reimbursed from the rents collected, for the payment by him of valid incumbrances and taxes, and for insurance and repairs — the meaning of " net rents," in an accounting by such a grantee, considered.*

On December 9, 1884, John Wilkinson took possession of certain real property under a deed to himself as grantee, which was set aside July 1, 1886, as fraudulent in fact, by a judgment in this action, which was affirmed by the General Term and the Court of Appeals, the court holding that the grantors and the grantee conspired to defraud the creditors of the grantors, and that the deed was given by the grantors, and was accepted by the grantee, for the purpose of carrying into effect their fraudulent scheme.

The judgment adjudged and decreed that the defendant John Wilkinson " account for and pay over to the receivers thereby appointed the amount found due on said accounting of the *net* rents and profits collected from said premises from the date of the assignment to Charles E. Hubbell, therein referred to, to wit, December 9, 1884, to July 1, 1886; and, also, that said John Wilkinson surrender to said receivers possession of said premises covered by said deed and mortgage, and that said Charles E. Hubbell fully account for and pay over to said receivers all the property which has come into his hands, possession or control under said fraudulent assignment, together with such rents as he has or shall collect from the real estate so conveyed to said John Wilkinson, as

aforesaid, together with the rents, profits, interest and income, and any and all increase thereof, as may be settled and found upon and by the accounting herein provided for."

By an order made at a Special Term, after an accounting by John Wilkinson before a referee, he was charged with the rents received by him, and with interest thereon, amounting to $45,181.73, and credited with $21,620.13 for amounts paid by him therefrom for interest on mortgages on the premises, for repairs, taxes and insurance on the property, and for payments made to an agent appointed to collect the rents.

An appeal was taken from the order so made by the judgment-creditors and one of the receivers and by John Wilkinson, the latter appealing from the part of the order charging him with the rents and profits and interest.

*Held,* that, as the Court of Appeals had held that John Wilkinson must pay to the receivers the rents and profits accrued from the subject of the fraudulent grant while he was in possession of it, that interest might be properly allowed upon the rents and profits so received by him, as he was a fraudulent grantee.

Part of the real property attempted to be conveyed by the fraudulent grant was subject to two mortgages given November 1, 1873, payable the next day and bearing interest (the rate not specified) payable semi-annually. The grantee paid interest on these mortgages at the rate of seven per cent per annum, from which the Special Term deducted one per cent and credited the grantee with the remainder.

*Held,* that, assuming that the grantee was entitled to be allowed for interest paid, he was not entitled to be allowed a greater sum than could have been recovered from the property, and that as the holders of these mortgages could only collect interest at the rate of six per cent per annum, no error was committed by the Special Term.

*Bennett* v. *Bates* (94 N. Y., 354); *O'Brien* v. *Young* (95 id., 428) followed.

That when a grantee takes a deed for the purpose of defrauding the creditors of the grantor, and the deed is subsequently set aside for the fraud, the grantee is not entitled to be reimbursed out of the subject of the grant, or out of the rents and profits arising therefrom, as against the creditors of the grantor, for moneys expended in paying valid incumbrances, or taxes, or for repairs, improvements, or insurance, or in caring for the property.

The cases bearing upon this question collated, distinguished and considered by FOLLETT, J.

That that part of the order which allowed John Wilkinson $7,973.86 for interest paid on the mortgages, $1,351.78 paid for repairs, $9,257.59 paid for taxes, $2,136.90 paid for insurance, and $900 for collecting rents, should be reversed, and that John Wilkinson should be charged with the full amount of rents received, with interest upon them from the dates when the sums were received to the date of their payment to the receiver, at the rate of six per cent per annum. (HARDIN, P. J., dissenting upon the ground that, as the judgment which was entered provided that John Wilkinson " account for and pay over to the receivers thereby appointed, the amount found due on said accounting of the *net* rents and profits collected from the said premises;" that the referee committed no error in ascer-

taining the net rents and profits by deducting from the gross rents received the necessary expenditures for necessary repairs and taxes.)

*It seems* that, assuming that the judgment did provide for an accounting "for the net rents and profits collected from the said premises," the addition of the word "net" did not, in any way, alter or effect the judgment; that the term net rents in this case meant the rents actually received, and that the fact that the defendant Wilkinson afterward paid for repairs on the property and also paid taxes and insurance premiums, did not reduce the amount of rents collected or render the rents so collected, any the less net rents than they would have been if he had not paid for repairs and for such taxes and insurance premiums. (Per MARTIN, J.)

That if this construction was too strict, and it should be held that from the words "net rents and profits" it might be implied that deductions might be made from the rents received, still, it would be clear, that even then only such deduction should be made as would be justified by the principles of law applicable to such a case, and, that as John Wilkinson was a wrong-doer, a fraudulent vendee of the property from which rents were received, he was not entitled to any of the credits allowed him by the order. (Per MARTIN, J.)

APPEAL by the plaintiffs and by one of the receivers of J. F. and A. Wilkinson, and of the defendant J. Forman Wilkinson, from an order of the Onondaga Special Term, entered in the office of the clerk of Onondaga county, on December 22, 1887, modifying and confirming the report of a referee appointed to take and state the account of John Wilkinson a fraudulent vendee, for rents and profits.

December 9, 1884, John Wilkinson took possession of certain real property under a deed to him, which was set aside July 1, 1886, as fraudulent in fact; the court holding that the grantors and grantee conspired to defraud the creditors of the grantors, and that the deed was given by the grantors and was accepted by the grantee for the purpose of carrying into effect their fraudulent scheme. The grantee received the rents and profits of this property from December 9, 1884, to July 1, 1886 (the date of the entry of the judgment), which he was directed by the judgment to account for and pay over to the receivers appointed by the judgment, which provided, among other things, as follows:

It is hereby adjudged and decreed: That the deed of the real estate made and executed by the defendant J. Forman Wilkinson and Alfred Wilkinson, deceased, and their respective wives, to the defendant John Wilkinson, which is dated May 5, 1884, and was recorded December 9, 1884, in Onondaga County Clerk's office, and which is particularly described in the complaint in this action, was

and is fraudulent and void as against the plaintiffs herein and their judgments and claims, and the same is hereby vacated and set aside.

And it is further adjudged and decreed : That said defendant John Wilkinson is not entitled to hold said deed and conveyance as security for any indebtedness existing from.J. Forman Wilkinson and Alfred Wilkinson, deceased, on account of his previous knowledge and participation in the fraudulent intent of the said grantors in executing the same, and it is adjudged that he account for and pay over to the receivers hereinafter appointed, the amount found due on said accounting of the net rents and profits collected from said premises from the date of the assignment to Charles E. Hubbell, hereinafter referred to, to wit, December 9, 1884, to July 1, 1886.

And it is further adjudged and decreed : That the purported general assignment made and executed December 9, 1884, by the said J. Forman Wilkinson and Alfred Wilkinson to the defendant Charles E. Hubbell for the benefit of their creditors, as alleged, which was recorded in Onondaga County Clerk's office December 10, 1884, was and is fraudulent and void as against these plaintiffs and their judgments and claims, and the same is hereby vacated and set aside.

And it is further adjudged and decreed : That Charles E. Hubbell and Albert K. Hiscock, both of Syracuse, New York, be and they are hereby appointed receivers of the personal property of the said J. Forman Wilkinson and Alfred Wilkinson, in the hands of the said assignee, and elsewhere, and of the rents and profits of the real estate that has or shall accrue, from December 9, 1884, according to the usual course and practice of this court.

And it is further adjudged and decreed : That said defendants, J. Forman Wilkinson and Charlotte M. Wilkinson, as executrix of the last will and testament of Alfred Wilkinson, deceased, and said John Wilkinson, surrender to said receivers possession of said premises covered by said deed and mortgage, and that said Charles E. Hubbell fully account for and pay and deliver over to said receivers all the property which has come into his hands, possession or control under said fraudulent assignment, together with such rents as he has or shall collect from the real estate so conveyed to said John Wilkinson as aforesaid, together with the rents, profits, interest, income, and any and all increase thereof as may be settled and found upon and by the accounting herein provided for.

This judgment was affirmed in July 1887, by the General Term, and in October, 1888, by the Court of Appeals. The Special Term, by an order entered December 20, 1887, charged John Wilkinson with the rents received, and credited him with certain payments, which are shown by the following statement:

| | | |
|---|---:|---:|
| John Wilkinson, received rents (Schedule A) | $42,466 | 34 |
| John Wilkinson, charged with interest | 2,715 | 39 |
| | **$45,181** | **73** |

*Credit.*

| | | | | |
|---|---:|---:|---:|---:|
| John Wilkinson paid interest on mortgages (Schedule B), less one per cent, $1,327.80, | $7,973 | 86 | | |
| John Wilkinson, paid for repairs on property (Schedule C) | 1,351 | 78 | | |
| John Wilkinson, paid taxes on property (Schedule D) | 9,257 | 59 | | |
| John Wilkinson, paid for insuring property (Schedule E) | 2,136 | 90 | | |
| John Wilkinson, allowed for pay of agent to collect rent, etc | 900 | 00 | | |
| | | | 21,620 | 13 |
| John Wilkinson, ordered to pay receivers | | | **$23,561** | **60** |

John Wilkinson appeals from that part of the order charging him with the rents, profits and interest, $45,181.73; from that part which allows but $900 for payment of agents who collected the rents and cared for the property, instead of the amount claimed ($2,323.32), which was five per cent on the sum collected; and from that part of the order which deducts $1,327.80, the difference between six per cent and seven per cent, paid for interest on mortgages, as charged in Schedule B. The judgment-creditors and Albert K. Hiscock, one of the receivers, appeal from that part of the order allowing John Wilkinson any of the five above specified credits, aggregating $21,620.13.

*Hiscock, Doheny & Hiscock,* for judgment-creditors and receiver.

*Louis Marshall,* for John Wilkinson.

FOLLETT, J. :

The Court of Appeals has held that John Wilkinson must pay to the receivers the rents and profits accruing from the subject of the fraudulent grant while he was in possession of it. (*Loos* v. *Wilkinson*, 110 N. Y., 195.) Interest may be allowed upon the rents and profits received by and recovered from a fraudulent grantee. (*Jackson* v. *Wood*, 24 Wend., 443; *Vandevoort* v. *Gould*, 36 N. Y., 639, 647; *Taylor* v. *Taylor*, 43 id., 578, 584; *Cowing* v. *Howard*, 46 Barb., 579; *Low* v. *Purdy*, 2 Lans., 422; *New Orleans* v. *Gaines*, 15 Wall., 624; *Mowry* v. *Whitney*, 14 id., 620; *Littlefield* v. *Perry*, 21 id., 205; 1 Sedg. on Dam. [7th ed.], 254, note; Sedg. & W. on Tit., § 670.)

Part of the real property attempted to be conveyed by the fraudulent grant was subject to two mortgages given November 1, 1873, payable the next day, and bearing interest (the rate not specified) payable semi-annually. The grantee paid interest on these mortgages at the rate of seven per cent per annum, from which the Special Term deducted one per cent, and credited the grantee with the remainder. The holders of these mortgages could only collect interest at the rate of six per cent per annum. (*Bennett* v. *Bates*, 94 N. Y., 354; *O'Brien* v. *Young*, 95 id., 428.) Assuming that the grantee is entitled to be allowed for interest paid, he is not entitled to be allowed a greater sum than could have been recovered from the property. Assuming (which is not held) that the grantee is entitled to be allowed for such necessary expenses as he incurred in caring for the subject of the grant and in collecting the rents, the evidence as to the extent and value of the services is such that the amount was a question of fact for the Special Term, and we are satisfied that no error was committed, as against the grantee, in the amount allowed. No error was committed by the Special Term as against John Wilkinson, and his appeal cannot be sustained. When a grantee takes a deed for the purpose of defrauding the creditors of the grantor, and the deed is subsequently set aside for the fraud, the grantee is not entitled to be reimbursed out of the subject of the grant, or out of the rents and profits arising therefrom, as against the creditors of the grantor, for money expended in paying valid incumbrances, taxes, for repairs, improvements, insurance, or in caring for the property. (*Boyd* v. *Dunlap*, 1 Johns. Ch., 478; *Wood* v. *Hunt*, 38 Barb., 302; *Union National Bank*

v. *Warner*, 12 Hun, 306 ; *Davis* v. *Leopold*, 10 N. Y. Week. Dig., 266 ; *S. C.*, rev., 13 id., 337 and 87 N. Y., 620 ; *Taylor* v. *Taylor*, 43 id., 578, 584 ; *Woodhull* v. *Rosenthal*, 61 id., 382, 396 ; *Wood* v. *Wood*, 83 id., 575, 581 ; *Bean* v. *Smith*, 2 Mason, 252 ; *Railroad Co.* v. *Soutter*, 13 Wall., 517 ; *Thompson* v. *Bickford*, 19 Minn., 18 ; *Pettus* v. *Smith*, 4 Rich. Eq. [S. Car.], 197 ; *Seivers* v. *Dickover*, 101 Ind., 495 ; *Borland* v. *Walker*, 7 Ala., 269 ; *Mosely* v. *Miller*, 13 Bush. [Ky.], 408 ; *Stovall* v. *The Farmers and Merchants' Bank*, 8 Sm. & M. [16 Miss.], 305 ; *Wilson* v. *Horr*, 15 Iowa, 489 ; *Allen* v. *Berry*, 50 Mo., 90 ; *Kenney* v. *Browne*, 3 Ridg. P. C., 462 ; *Briggs* v. *Merrill*, 58 Barb., 389 ; *Shand* v. *Hanley*, 71 N. Y., 319 ; *Beckett* v. *Tyler*, 3 McA., 319 ; Wait's Fraud. Convey., chap. 13 ; Bump on Fraud. Convey. [2d ed.], 594 ; 1 Sedg. on Dam. [7th ed], 246 ; Just. Inst., book 2, tit. 1, § 35, Sanders [6th ed.], 110 ; Domat's Civ. Law [Cush. ed.], 1981.) This general rule is so broadly and firmly settled in all countries that we might safely reverse that part of the order which allows John Wilkinson to set off $21,620.13 against the sum which he received for rents, and stop the discussion at this point ; but the amount involved, and the earnestness with which this case has been argued, perhaps, justify a statement of how this wholesome rule has been applied to particular cases.

In *Wood* v. *Hunt* (*supra*), the subject of the fraudulent grant was directed to be sold for the benefit of the grantor's creditors ; and it was provided that if the creditors' claims were not paid out of the avails, the grantee should pay over the rents and profits, unless he elected to pay the deficiency ; and he was disallowed the sums expended in paying the grantor's creditors and the claims which he had purchased of the grantor's creditors. In *Union National Bank* v. *Warner* (*supra*), certain debts of the grantor, amounting to $5,047, were specified in the deed, and assumed and agreed to be paid by the fraudulent grantee. The deed was set aside, and it was held that the fraudulent grantee was not entitled to be protected against the debts he had assumed. In *Davis* v. *Leopold* (*supra*), the fraudulent grantee had assumed the payment of a prior mortgage for $1,000 ; but it was held that she was not entitled to protection against the liability assumed. In *Bean* v. *Smith* (*supra*), the fraudulent grantee, subsequent to the date of the

deed, and prior to the time when it was set aside as fraudulent, paid sums for the benefit of the grantor; and it was held that he was not entitled to be reimbursed. In *Railroad Company* v. *Soutter* (*supra*), fraudulent purchasers of a railroad paid a prior mortgage amounting to nearly half a million dollars; and it was held, their purchase being set aside at the suit of creditors, that they were not entitled to be reimbursed, as against the creditors. In *Thompson* v. *Bickford* (*supra*), the defendant received a fraudulent grant in October, 1858, of land, subject to a valid mortgage. At this time the grantor was indebted to the grantee, and it was agreed that after the grantee was paid out of the land the remainder should be returned to the grantor, which was done by both to defraud the grantor's creditors. The grantor received the rents and profits until January 1, 1859, and thereafter the fraudulent grantee received them until 1865, when he sold and conveyed the land. In the meantime the grantee had paid $1,200 in discharge of the prior mortgage. The grantee was compelled to pay over to the grantor's creditors the rents and profits received and the avails of the sale, without deduction on account of the mortgage paid, taxes paid, or the indebtedness of the grantor to the grantee. In *Pettus* v. *Smith* (*supra*), one Thomas Smith owned negroes, which were subject to a valid mortgage for $4,600, which he sold to one Ryan for $5,000, out of which Smith paid the mortgage; and thereafter Charles Smith (a brother of Thomas) paid Ryan the $5,000 and took a bill of sale of the negroes, all of which was done by the three for the purpose of defrauding the creditors of Thomas Smith. Charles Smith was held liable to account for the sum for which the negroes were sold, for sums received for their hire, for their increase, and to deliver those remaining unsold, without allowance for the $4,600 paid to discharge the prior mortgage. In *Seivers* v. *Dickover* (*supra*), a failing debtor transferred his chattels to defraud his creditor, to one who knew the purpose. The fraudulent transferree paid a valid judgment and a valid note held by others against the fraudulent debtor, amounting to $658, and paid the fraudulent debtor $342 in cash. The fraudulent transferree was held liable to the creditors of the debtor for the value of the chattels, without allowance for the sums paid. In *Borland* v. *Walker* (*supra*), the

fraudulent grantee had, in consideration of the grant, paid large sums to the grantor's creditors, but was not allowed for such payments. In *Mosely* v. *Miller* (*supra*), the defendant induced the plaintiff, by fraudulent representations, to convey a farm to defendant, and upon the conveyance being set aside for the fraud, the defendant was charged with the rent, with interest, and was not allowed for his improvements. In *Stovall* v. *The Farmers and Mechanics' Bank* (*supra*), one who conspired with others to purchase property at an execution sale for much less than its value, for the purpose of defrauding the creditors of the defendant in the execution, was not allowed the sum which he paid the sheriff at the sale, though it had been applied in reduction of the judgment upon which the execution was issued, and was compelled to account for the whole value of the property. In *Wilson* v. *Horr* (*supra*), a chattel mortgage was taken for a sum greater than was due the mortgagee, for the purpose of defrauding the mortgagor's creditors, and it was not allowed to stand as security for the sum actually due from the mortgagor to the mortgagee. In *Allen* v. *Berry* (*supra*) a fraudulent grantee was compelled to account for all he had received, including rents and profits, without deduction for improvements made. In *Kenney* v. *Browne* (*supra*), an attorney fraudulently obtained a grant from his client, which was set aside for the fraud, and the grantee was refused compensation for improvements made by him. The chancellor, speaking for the court, said: " As to the equity arising from lasting and valuable improvements, I do not consider a man who is conscious of a defect in his title, and, with that conviction in his mind, expends a sum of money in improvements, as entitled in any sort to avail himself of it. If the person really entitled to the estate will encourage the possessor of it to expend his money in improvements, or if he will look on and suffer such an expenditure, without apprising the party of his intention to dispute his title, and will afterwards endeavor to avail himself of such fraud, upon the ground of fraud, the jurisdiction of a court of equity will clearly attach upon the case. But does it follow from thence that if a man has acquired an estate by rank and abominable fraud, and shall afterwards expend his money in improving the estate, that, therefore, he shall retain it in his hands against the lawful proprietor? If such a rule should prevail, it will certainly fully

justify a proposition which I once heard stated at the bar of the Court of Chancery, that the common equity of this country was to improve the right owner out of the possession of his estate."

The policies of insurance were not taken for the benefit of the creditors of the fraudulent grantors, but for the benefit and in the name of the fraudulent grantee. If the buildings had burned, the creditors could not have recovered the damages from the insurer. (*Bernheim* v. *Beer*, 56 Miss., 149; S. C., 7 N. Y. Weekly Dig., 61; *Lerow* v. *Wilmarth*, 91 Mass. [9 Allen], 382; *Carpenter* v. *The Providence Washington Ins. Co.*, 16 Pet., 495; *Nippes's Appeal*, 75 Pa. St., 472; Bump on Fraud. Convey. [2d ed.], 591.)

In *Robinson* v. *Stewart* (10 N. Y., 189), a father conveyed all of his real estate, worth $2,000, and transferred chattels worth $326, to his son, who agreed to pay his father's debts, supposed to amount to about $400, and to pay $300 to his sisters, which he paid, and much more. At the date of the conveyance and transfer, the father was an indorser on a note, but died before it fell due. The maker failed to pay the note, and the heirs of the indorser were charged. The holders of the note brought an action and set aside the conveyance and transfer, as fraudulent, as against them; but, by the judgment, the son was subrogated to the rights of the creditors whose claims he had paid, and the avails of the property was decreed to be applied in payment, *pro rata*, of the decedent's debts. The son averred, in his answer, that he did not know of his father's indorsement when he received the conveyance and transfer, and there was no evidence that he did. No evidence was taken in the case, which was determined on the pleadings and a stipulation. (Pages 192, 194.) The provision in the judgment in favor of the grantee can be upheld upon two grounds: (1) That it was a case of constructive instead of a case of active fraud; (2) that the grantor being dead, the plaintiffs having no judgment or lien, and the grantee's claims against his father's estate not being extinguished by setting aside the deed, his claims and and all others should be paid *pro rata* out of the decedent's estate in the due course of administration. In *King* v. *Wilcox* (11 Paige, 589), the fraudulent grantee purchased and took assignments of two mortgages, and the complainant, in his bill, conceded to the defendant the position of a mortgagee in possession. This assertion of counsel is confirmed

by the chancellor. (page 595.) The position of a mortgagee in possession is quite different from the position of a fraudulent grantee in possession; but there are remarks in the opinion indicating that the chancellor understood that such a grantee might be compensated for improvements made by him, but these remarks are without support in the prior or subsequent authorities. The learned chancellor had, in an earlier case (*Putnam* v. *Ritchie*, 6 Paige, 403, 404), limited the right of possessors of land without title to offset improvements, to possessors in good faith.

To sustain the claim for repairs, we are referred to *Jackson* v. *Ludeling* (99 U. S., 513), in which Mr. Justice BRADLEY, speaking for the court, said: "It cannot be doubted that they (defendants) supposed themselves to be the legal owners of the property by virtue of the judicial sale, and made the repairs and improvements in controversy under that idea; but, as the vice of their title consisted in their own inequitable acts and proceedings, we think that they are to be regarded, in the language of the civil law, as possessors in bad faith. The common law allows nothing to the possessor in good or bad faith for expenditures made upon land from which he is evicted by superior title; but equity, in cases within its jurisdiction, allows the possessor in good faith both for repairs and improvements; but where the possessor (being a trustee) has been guilty of actual fraud, it makes him no allowance for improvements, but allows him compensation for necessary repairs. (Lewin on Trusts, 466.) The present case, however, is to be governed by the law of Louisiana, which is based upon the civil law, not precisely as laid down in the compilations of Justinian, but as interpreted in the jurisprudence of France and Spain, and has some peculiar rules on this subject." (99 U. S., 518, 519.) Article 2314 of the Louisiana Code, by which this case was controlled, provides: "He to whom property is restored must refund to the person who possesses it, even in bad faith, all he had necessarily expended for the preservation of the property." Notwithstanding this section and the circumstances under which the repairs to this railroad (which was in a state of complete dilapidation and ruin, and was put in working order) were made, Mr. Justice FIELD dissented most vigorously in an opinion in which, among other things, he said: "In the courts that administer the common law, the rights of the

owner are paramount and exclusive. An occupant without title is not recognized as entitled to compensation for improvements. Heron, in his History of Jurisprudence, says: There is no case 'decided in England, Ireland, or the United States, grounded upon common-law principles, declaring that an occupant of land, without a special contract, is entitled to payment for his improvements, as against the true owners, when the latter had not been guilty of a fraud in concealing the title.'" (99 U. S., 537.)

It is insisted that Wilkinson is entitled to be credited with $900, paid for collecting rents, but it is difficult to see upon what ground. He did not expend this, or any of the sums with which he was credited, for the benefit of the creditors of his grantor, nor in good faith, but to carry into practical effect his fraudulent scheme and reap the benefits of the attempted fraud for himself and his co-conspirators. The fraud described in the record, and by which Wilkinson acquired possession and sought to acquire title, is a criminal fraud, for which the perpetrators are liable to indictment, and, upon conviction, to imprisonment in a penitentiary for not more than one year, or to a fine of not more than $500, or to both (Penal Code, §§ 15, 586); which fact Wilkinson and those who have acted with him seem to have forgotten, as well as the rule that persons who obtain possession of property by criminal means do so at their peril, and are not entitled to reimbursement for moneys expended in preserving, repairing or improving the property. As well might a person acquiring possession of property by larceny, when compelled to surrender it, ask a court of equity to require the rightful owner to pay for moneys expended in repairing, insuring and caring for the property, as for this grantee, who acquired possession by criminal means, to ask a court to allow him for such expenditures.

That part of the order which allows John Wilkinson $7,973.86 for interest paid on mortgages, $1,351.78 paid for repairs, $9,257.59 for taxes paid, $2,136.90 for insurance paid, and $900 for collecting rent, aggregating $21,620.13, is reversed, and said John Wilkinson is charged with the full amount of rents received, with interest upon them from the dates when the sums were received to the date of their payment to the receiver, at the rate of six per cent per annum. The order to be settled before Mr. Justice Martin;

Conrad Loos and others, plaintiffs, and Albert K. Hiscock, receiver, to have ten dollars costs and printing disbursements against John Wilkinson.

MARTIN, J.:

The judgments, in pursuance of which the reference in this matter was had, and the order appealed from made, provided that John Wilkinson should account for and pay to the receivers herein " the amount found due on said accounting of the *net* rents and profits collected from said premises " from December 9, 1884, to July 1, 1886 ; but such judgments appointed the persons named therein as receivers of " the rents and profits," directed the referee to take an account for " the rents and profits," and provided that upon the coming in of the referee's report judgment may be entered " for the rents and profits," without in either case using the word net. Hence it may be a question whether under the provisions of the judgment, when taken as a whole, it should be held that they provide for an accounting for the " net rents and profits " only. But assuming that the judgments provide for an accounting for " the net rents and profits collected from the premises," and it becomes important to determine the meaning of the term " net rents and profits " as used therein. Does the addition of the word " net " in any way alter or affect the judgment ? Does the term " net rents " in this case mean more or less than rents received ? The only rents received by the fraudulent vendee were net rents ; or, in other words, he has been charged only for such rents as have been actually received by him. The fact that he afterwards paid for repairs on the property, paid the taxes and for insurance does not reduce the amount of rents collected, nor render the rents so collected any the less net rents than they would have been if he had not paid such taxes, insurance and for repairs. I do not think that the use of the word net in any way changes the liability of such fraudulent vendee for the rents collected by him.

If, however, this construction is too strict, and it should be, that from the words " net rents and profits " it may be implied that deductions might be made from the rents received, still, it would seem clear that, even then, only such deductions should be made as would be justified by the principles of law applicable to such a case.

I do not think it was intended by the use of the words "net rents and profits" to authorize any credit to the defendant Wilkinson which was not justified by the rules of law applicable to the case of a fraudulent vendee; nor do I think such was the effect of the words used. John Wilkinson was a wrong-doer, a fraudulent vendee of the property from which such rents were received, and was not, I think, entitled to any of the credits allowed him by the order appealed from for the reasons which are so clearly and fully stated in my brother FOLLETT's opinion, in which I concur.

HARDIN, P. J. (dissenting):

Upon the accounting had of the rents and profits received by John Wilkinson, the referee allowed to be deducted from the rents received by Wllkinson the amount expended for necessary repairs and the amount paid for taxes during the eighteen months while the rents were accruing. These deductions were sustained by an order made at Special Term, now brought before us for review. By the decision made at Special Term, which has been affirmed by this court and by the Court of Appeals, it was found, as a matter of law, that John Wilkinson "should fully account for, and pay over to the receivers to be appointed herein, the amount found due on said accounting of the net rents and profits collected of said premises from the date of said assignment to July 1, 1886." In the judgment which was entered upon that decision, it was provided that John Wilkinson "account for, and pay over to the receivers hereinafter appointed, the amount found due on said accounting of the net rents and profits collected from said premises, from the date of the assignment to Charles E. Hubbell, hereinafter referred to, to wit, December 9, 1884, to July 1, 1886." In the action of Bates and others against Wilkinson and others, it was adjudged that John Wilkinson "account for, and pay over to the receivers hereinafter appointed, the amount found due on the said accounting of the net rents and profits collected from said premises, from the date of the general assignment to Charles E. Hubbell, hereinafter referred to, to wit, December 9, 1884, to July 1, 1886." It was found by the referee that during the period while the rents were accruing, there was "necessarily expended for the care and preservation of the said property, and for repairs thereon, the sum of $1,351.73." It was also found that, "during the same period, he paid the proper

authorities in discharge of city and county taxes which had been duly assessed, and constituted a lien upon said property, the sum of $9,257.59." As a matter of law, he found that the expenditure "for taking care of and preserving the property, and such as were necessary for realizing the rents and profits, should be allowed to the defendant upon the accounting" and that there should be "deducted from the amount of rents and profits received  *  *  * the sums paid by him for taxes and assessments upon said property."

Inasmuch as the decision and judgment entered thereon provided for an accounting and a payment over of the net rents and profits. I am inclined to think the defendant should be allowed, out of the gross rents received, the necessary expenditures for repairs and the necessary expenditures for taxes. If such an allowance be made to the defendant, a reasonable interpretation is given to the language of the decision and the judgment, in virtue of which the accounting took place; besides, the creditors receive as much as the property would have yielded, had not the fraudulent conveyance, which has been set aside, been made. Precedents exist for such allowances, which have not been directly interfered with or overruled by any authority which has come under observation.

In *Van Horne* v. *Fonda* (5 Johns. Ch., 388), which was a case of actual fraud, Chancellor KENT, in pronouncing the decree and providing for an accounting of a defendant, observed: "He entered in his own wrong and held under a claim of title procured by fraud, and he is not entitled beyond the amount of his actual expenditures." (5 Johns. Ch., 415.) He observed, further, that all such matters "must be satisfactorily proved," and he directed a reference to a master to state an account "upon the principles and under the directions already declared."

In *Sands* v. *Codwise* (4 Johns., 605), an order was made by the Court of Errors for an accounting against parties who had taken "two deeds grossly fraudulent and absolutely void," and the decree provided as follows: "And that in taking such accounts, allowances be made to the said Comfort Sands and Henry Sands, for taxes, repairs and improvements, permanently useful, and the balance of the accounts for the said last-mentioned rents and profits, when received, shall be placed in the hands of the assignee of the estate of Comfort Sands, as such bankrupt."

In *Jackson* v. *Ludeling* (99 U. S. 536), it was stated in the prevailing opinion that " any net earnings of the railroad, or proceeds of property, which shall have come into his hands as such receiver, after paying his expenses and compensation, will go to the benefit of the bondholders."

If the learned trial judge had intended to exclude an allowance to the accounting defendant of the necessary expenditures for necessary repairs, and the necessary disbursements for town, county, State and municipal taxes, it may reasonably be supposed and held that he would not have used the expression " net rents and profits," in his decision and the judgment entered thereon. I am, therefore, of the opinion that the referee committed no error in ascertaining the net rents and profits, in deducting from the gross rents received the necessary expenditures for necessary repairs and taxes already alluded to.

That part of the order which allows John Wilkinson $7,973.86 for interest paid on mortgages; $1,351.78 paid for repairs; $9,257.59 for taxes paid ; $2,136.90 for insurance paid, and $900 for collecting rents, aggregating $21,620.13, is reversed ; and that part of the order charging John Wilkinson with the full amount of rents received, with interest upon them, is affirmed, with costs and printing disbursements against John Wilkinson. The order to be settled by Mr. Justice MARTIN.