In the Matter of the Accounting of HERMAN LEVIN, as an Executor of MORRIS LEVIN, Deceased. HERMAN LEVIN, Individually and as an Executor of MORRIS LEVIN, Deceased, Appellant and Respondent; BELLE L. BURRILL et al., Respondents and Appellants.

Argued April 2, 1951; decided July 11, 1951.

*Max Zucker* and *Stanley Zucker* for accountant, appellant and respondent. I. Where parent and child live apart, and the services rendered are not of a domestic or personal nature and are not in the ordinary course of services from child to parent in the household duties of the parent and where the services are not prompted by mutual obligations and benefits and the parent has ample means, there is no presumption that the services are gratuitous. (*Wilsey* v. *Franklin*, 57 Hun 382; *Marion* v. *Farnan*, 68 Hun 383; *Matter of Strickland*, 10 Misc. 486; *Matter of Mulderig*, 196 Misc. 527; *Matter of Parker*, 69 Misc. 136; *Matter of Burton*, 143 Misc. 440; *Matter of Hughes*, 229 App. Div. 614; *Williams* v. *Hutchinson*, 3 N. Y. 312; *Matter of Lannon*, 75 Misc. 66; *Matter of Grogan*, 82 Misc. 555.) II. In construing a contract, the court will not excise a material portion thereof or insert additional words so as to make a new contract for the parties. (*Friedman* v. *Handelman*, 300 N. Y. 188; *Friedman & Co.* v. *Newman*, 255 N. Y. 340; *Heller* v. *Pope*, 250 N. Y. 132; *Cream of Wheat Co.* v. *Crist Co.*, 222 N. Y. 487.) III. The failure to plead the Statute of Frauds or specifically to refer to the Statute of Frauds in connection with the objections made upon the trial does not constitute a waiver of the claim by the accountant that the agreement in writing produced by the objectants is not a valid one under the statute. (*Williamsburg City Fire Ins. Co.* v. *Lichtenstein*, 181 App. Div. 681; *Merritt* v. *Seaman*, 6 N. Y. 168; *Mesibov, Glinert & Levy* v. *Cohen Bros. Mfg. Co.*, 245 N. Y. 305; *Friedman & Co.* v. *Newman*, 255 N. Y. 340; *Matter of Burnham*, 234 N. Y. 475.) IV. The agreement produced by the objectants in support of their claim does not satisfy the requirements of subdivisions 1 and 7 of section 31 of the Personal Property Law. (*Bayreuther* v. *Reinisch*, 264 App. Div. 138, 290 N. Y. 553; *Matter of Douglas*, 169 Misc. 716, 256 App. Div. 1070; *Matter of Poel* v. *Brunswick-Balke-Collender Co.*, 216 N. Y. 310; *Matter of Cooley* v. *Lobdell*, 153 N. Y. 596.) V. The promise of Morris not to revoke his will if Yetta should predecease him, and, at time of her death, should not have revoked her will is a unilateral contract. There must be com-

plete performance on the part of one to make the offer of the other a binding promise. The agreement is *nudum pactum* and unenforcible at law. (*Petterson* v. *Pattberg,* 248 N. Y. 86; *Coletti* v. *Knox Hat Co.,* 252 N. Y. 468; *Matter of Byrnes,* 260 N. Y. 465; *Matter of Epstein,* 176 Misc. 494.)

*George A. Spiegelberg* and *Leon Silverman* for objectants, respondents and appellants. I. The letter from Morris to Yetta is a sufficient memorandum of a prior oral agreement to satisfy the Statute of Frauds. II. Assuming that the first paragraph of the letter was inadequate to satisfy the Statute of Frauds, the second paragraph admittedly was sufficient for that purpose and the doctrine of *falsa demonstratio non nocet* will operate to excise the unnecessary paragraph. (*Patch* v. *White,* 117 U. S. 210; *Burr* v. *Broadway Ins. Co.,* 16 N. Y. 267; *Mansfield* v. *New York Central & H. R. R. R. Co.,* 102 N. Y. 205; *Duncan* v. *Wohl, South & Co.,* 201 App. Div. 737.) III. Parol evidence is admissible to identify the wills of Yetta and Morris and to prove the oral agreement between them confirmed by the letter from Morris to Yetta dated September 16, 1942. (*Mesibov, Glinert & Levy* v. *Cohen Bros. Mfg. Co.,* 245 N. Y. 305; *Stulsaft* v. *Mercer Tube & Mfg. Co.,* 288 N. Y. 255; *Koch* v. *Regan,* 272 App. Div. 920; *Bibb* v. *Allen,* 149 U. S. 581; *Friedman & Co.* v. *Newman,* 255 N. Y. 340; *Tioga Co. Gen. Hosp.* v. *Tidd,* 164 Misc. 273.) IV. The agreement between Morris and Yetta cannot be frustrated by the unilateral action of Morris after Yetta's death. There was sufficient consideration to support Morris' promise not to revoke his will. (*Hamer* v. *Sidway,* 124 N. Y. 538; *Osborn* v. *Curtis,* 209 App. Div. 100; *Ga Nun* v. *Palmer,* 216 N. Y. 603.) V. The Statute of Frauds will not be permitted to be the instrument of fraud. (*Goldsmith* v. *Goldsmith,* 145 N. Y. 313; *Wood* v. *Rabe,* 96 N. Y. 414; *Wahl* v. *Seyfried,* 285 N. Y. 820; *Monica Realty Corp.* v. *Bleecker,* 229 App. Div. 184.)

DYE, J. The parties to this proceeding in the nature of an intermediate accounting are the executors of the will of the deceased father, Morris Levin. Herman is the son of the decedent by his first marriage. He files a voluntary account to which the others, Belle Burrill and Max Levin, children by decedent's second marriage, have filed objections, consisting of

several specifications, the principal of which and the one decisive of this appeal, is whether the testator in his lifetime agreed with his wife, Yetta, to bequeath his entire estate to their children in equal shares.

It appears that on September 14, 1942, the wife, Yetta, executed her will by which she bequeathed to the children, Belle and Max, in equal shares, money she had on deposit in a savings bank, and the balance of her estate in trust for the life use of her husband after payment of premiums on his life insurance, the remainder to her children or the survivor of them. Two days later, on September 16, 1942, the husband, Morris, executed his will by which he bequeathed his entire estate to his wife, Yetta, or if predeceased then to their children Belle and Max in equal shares, expressly stating that no provision was being made for his son, Herman. Coincident with the execution of the will he also signed the following letter:

" September 16th, 1942.

Dear Yetta:

This is to confirm our agreement, as follows:

You have under date of September 14, 1942, made a Will whereby you have bequeathed and devised to me the entire net income of your estate after the payment of certain premiums, if any, on life insurance carried by me. You have done so in the knowledge that if you should predecease me I will leave my entire estate to our children Max Levin and Belle Burrill. I have this day made a Will in which I have devised and bequeathed my entire residuary estate to our children Max and Belle in the event that you should predecease me.

This letter is to confirm my agreement that in the event that you should predecease me, and that at the time of your death you should not have revoked your said Will made on September 14, 1942, I will not revoke or alter my said will made today.

Affectionately,

MORRIS LEVIN "

Thereafter in April, 1944, Yetta died. Her will mentioned above was admitted to probate, her husband qualifying as executor. Two years later and on May 4, 1946, the husband, Morris,

executed the within will by which he bequeathed his entire estate to his three children, Herman, Belle and Max in equal shares.

A lawyer, related to both the testator and his wife, Yetta, and who represented them both at the time they made their wills, was allowed to testify over objection to the circumstances under which Morris had signed the letter. This was for the purpose of establishing that Morris knew and understood that Yetta was not leaving him her entire estate as stated in the letter but that a substantial part of the cash was being given to Belle and Max. The Surrogate ruled in favor of the objectants and made a decree directing distribution to them to the exclusion of the son, Herman. On appeal, the Appellate Division, First Department, found the alleged agreement to be invalid and unenforcible for noncompliance with the Statute of Frauds (Personal Property Law, § 31, subd. 7), which question was argued in that court for the first time (although it had been raised in the trial court by timely objection to the admission of parol testimony) and accordingly modified the Surrogate's decree by directing distribution to all three children, in accordance with the will, and as so modified otherwise affirmed. The modification was on the law alone — it having ruled that parol testimony was inadmissible to explain the variance between the terms of the will made by Yetta and the letter signed by Morris—for without such testimony the difference could not be reconciled. We agree with this view. The letter evidencing the oral agreement uses clear and unambiguous language. It must be read as a whole. It first makes reference to the will executed under date of September 14th and expresses an understanding on the part of Morris that " you have bequeathed and devised to me the entire net income of your estate " — but which in fact did no such thing. By her will, Yetta had made an outright gift of a substantial cash deposit to the children, Belle and Max. The second paragraph, when considered alone might be deemed sufficient compliance for then parol testimony could be limited to identification of the documents. The parol testimony as used here went beyond a mere descriptive error (*Patch* v. *White*, 117 U. S. 210; *Mansfield* v. *New York Central & H. R. R. Co.*, 102 N. Y. 205). It attempted

to demonstrate that the knowledge and understanding of the party to be charged as expressed in clear and unambiguous language were otherwise. Upon familiar practice a memo of a contract required by statute to be in writing must be by and of itself a complete expression of the intention of the parties without reference to parol evidence (*Stulsaft* v. *Mercer Tube & Mfg. Co.*, 288 N. Y. 255). Without the attorney's parol testimony that Morris understood and accepted the terms of his wife's will, there is no basis for a ruling that she performed in accordance with her agreed obligation and thus voided the statute. Here the parol was utilized, not to explain an ambiguity, but to prove that one of the parties understood and ratified a departure from the expressed terms of the agreement, in the absence of which he could not be bound. The other objections, having to do with the disallowance of certain claims for services and moneys loaned by Herman to the testator in his lifetime, have been affirmed and need not detain us further.

The order appealed from should be affirmed, with costs to all parties appearing separately and filing separate briefs payable out of the estate.

DESMOND, J. (dissenting). Decedent's will divided his estate equally among his three children. Objectants, two of those children, sought in this accounting proceeding (brought by the third child, Herman, their coexecutor) to compel performance by the executor of their father's promise, made in the last two sentences of the letter quoted below, to leave all his property to the two objectants:

> " 2712 Colden Avenue,
> Bronx, New York.
> September 16th, 1942.

Mrs. Yetta Levin,
2712 Colden Avenue,
Bronx, New York.
Dear Yetta:

This is to confirm our agreement, as follows:

You have under date of September 14, 1942, made a Will whereby you have bequeathed and devised to me the entire net income of your estate after the payment of certain premiums, if any, on life insurance carried by me. You have done so in

the knowledge that if you should predecease me I will leave my entire estate to our children Max Levin and Belle Burrill. I have this day made a Will in which I have devised and bequeathed my entire residuary estate to our children Max and Belle in the event that you should predecease me.

This letter is to confirm my agreement that in the event that you should predecease me, and that at the time of your death you should not have revoked your said Will made on September 14, 1942, I will not revoke or alter my said will made today.

Affectionately,

MORRIS LEVIN "

Yetta, to whom that letter was addressed and delivered, was decedent's wife and the mother of objectants (Herman was decedent's child by an earlier marriage). Yetta had made a will, on the date described in the letter (September 14, 1942) — but that will was not quite as ·described in the above letter. Actually, Yetta's will had not, as per the letter, left to her husband a life interest in her *whole* estate, but had included in that will a provision, not recited in the above letter, bequeathing certain bank accounts to objectants. In other words, the description, in decedent's letter to his wife, of his wife's previously made will, omitted all reference to the wife's bequest of the bank accounts to objectants, her two children.

The Appellate Division ruled against objectants. It decided that decedent's above-quoted letter to his wife did not comply with the Statute of Frauds (Personal Property Law, § 31, subds. 1, 7). The letter was, said the Appellate Division, unenforcible because, though it pertained to an agreement performance which was " not to be performed before the end of a lifetime " and, additionally, an agreement " to bequeath property " (Personal Property Law, § 31, subds. 1, 7; 276 App. Div. 739, 741), it was, so held the Appellate Division, not a complete memorandum of that agreement. There was, pointed out the Appellate Division, a variance between it (the letter) and the actual agreement between the parties. The Appellate Division held inadmissible the uncontradicted proof put before the Surrogate that the parties had, in truth, orally agreed to the actual terms of Yetta's will as written, and had orally agreed, at the same time, on decedent's promise as later clearly written into

the above-quoted letter. In other words, there was, at the trial, undisputed testimony by an attorney, who had represented both husband and wife at the time of the agreement, that the agreement was oral and that Yetta's will, made before the letter passed, complied in all respects with that oral agreement. The inference, which the Surrogate drew from that proof, was that the omission, from the description of Yetta's will in the first part of decedent's letter, of the bank account legacies, was inadvertent. However, it was the Appellate Division's view that such parol evidence was not validly received to correct what the court considered the incompleteness of the letter as a memorandum to satisfy the Statute of Frauds.

We note first, that the proceeding was not tried on any Statute of Frauds theory. That law question was never mentioned by counsel before the Surrogate, nor is it alluded to in the Surrogate's opinion. Herman Levin's counsel defended against the objections on two grounds: first, that there was no consideration for decedent's promise since his wife's will gave him no more than he could obtain by an election under section 18 of the Decedent Estate Law; and, second, that any consideration, running from the wife for the husband's promise in the letter, failed when it turned out that the wife's will was not exactly as described in that letter. We will spend little time on either of those contentions. As to the first, the wife's promise and her signing of a testament containing bequests to the husband, clearly made out consideration for his promise to her. The second argument, that is, that the wife breached her agreement, falls if the Surrogate was right in taking the proof as to what the oral agreement was. As we read this record, there never was any .objection to that testimony, any more than there ever was any pleading, statement or mention of the Statute of Frauds, in the Surrogate's Court. However, to face up to the questions of law argued to us, we will assume that the evidence point and the Statute of Frauds point are in the case.

The Statute of Frauds requires only that there be a written '' memorandum '' of a promise of this kind. It is too well settled to need discussion, that the underlying agreement may be oral so long as there be a written memorandum of the promise sought to be enforced, signed by the party against whom

enforcement is demanded. That this letter was a subsequent written memorandum of a previous oral pact appears on the letter's face, indeed in its very first phrase. No one now disputes that the letter was properly in evidence, as was the wife's will, made two days before. Thus we had in the record the letter containing the absolute promise which decedent later breached, and the wife's will itself, plus a showing that the letter contained a misdescription of that will. The letter contained no promise by the *wife*. Her oral promise had already been carried out by her execution of her will. The Statute of Frauds required, for enforcibility of the *husband's* oral promise, a written, signed memorandum of that promise, and surely we have that in his letter. The Statute of Frauds has nothing whatever to do with the *wife's* oral engagement. Herman Levin could, of course, point to the terms of the wife's will in an effort to prove that she had, in fact, by the provisions of that will, breached her earlier, oral agreement. But any such contention, by Herman, permitted, and indeed required, testimony as to what, in fact, Yetta had orally agreed to. That testimony came from the lawyer, and it was clear, undisputed and accepted by the Surrogate. It demonstrated (or at least justified the Surrogate's finding) that, although the bank account bequests in Yetta's will were not mentioned in the letter, such bequests, to be made by Yetta, had been a specific term of the prior oral agreement between husband and wife. We conclude, therefore, that the Surrogate, in requiring the husband's estate to perform the promise memorialized in the letter, violated neither the Statute of Frauds nor any rule of evidence.

All the members of this court are in agreement as to the two other matters argued before us (Herman's claims based on alleged services and loans) so we will not discuss them.

Since the Appellate Division modified on the facts as well as the law, there would have to be, in our view, a new trial as to objectants' claim only. We think the decree should be modified accordingly, with costs to abide the event.

Lewis, Conway and Froessel, JJ., concur with Dye, J.; Desmond, J., dissents in opinion in which Loughran, Ch. J., and Fuld, J., concur.

Order affirmed.