Bergan, J. (dissenting).
The complaint pleads a specific oral agreement between plaintiff and defendant made in September, 1964. The agreement, as pleaded, was that at defendant’s 1‘ request ’ ’ plaintiff ‘ ‘ undertook to seek and procure ’ ’ a purchaser for defendant’s stock. Such an agreement is “void” unless “ it ” or a note of memorandum “ thereof ” be in writing subscribed by defendant (General Obligations Law, § 5-701, subd. 10).
No written and subscribed words expressing the agreement and no note or memorandum describing it is produced by plaintiff. What is produced is a sentence in a written contract between defendant and a third party, the purchaser of his stock, executed a year later, the manifest purpose of which is to protect the purchaser against claims that might be made by purported finders or brokers, whether made by plaintiff “ or otherwj.se ”. Plaintiff is not a party to that contract.
There is a significant difference between an indemnity against claims and an admission that the claims are good. Hence the written undertaking by defendant to hold the third-party purchaser harmless from any brokerage or finders’ claims made by plaintiff or others is not a written expression of a contract between this plaintiff and this defendant.
Nor do the words of disclaimer which accompany the agreement to indemnify the purchaser express a contract between plaintiff and defendant. The representation that defendant has “ dealt with ” no person “ other than ” plaintiff “ as broker *577 or finder ’ ’ and that negotiations have been conducted by defendant without intervention of ‘ ‘ any other broker or finder ’ ’ do not state a broker’s or finder’s agreement between plaintiff and defendant or, for that matter, express any agreement at all between them.
Of course, negative words can carry affirmative meaning; but an expression such as “ I have made a brokerage contract with no man other than A ’ ’ does not meet the exacting test of a statute which says that your contract must be stated in writing if it is to be enforceable by A. There is lacking at least the essential link to A that an agreement was actually made, its conditions, and what was undertaken to be done.
These negative words and the merest implication that there probably was some sort of agreement fall far short of the requirement to meet the Statute of Frauds if the cases under that statute are kept in mind. This becomes more clear in view of the fact that plaintiff is suing under a specific oral contract made at a particular time, i.e., that defendant requested, and plaintiff undertook to perform, a contract of brokerage.
Both decisional law and authoritative commentary suggest that the case is not taken out of the statute. Early in the judicial history of the State and on the authority of many English decisions, Chancellor Kent laid it down that the memorandum to take a case out of the Statute of Frauds must contain “ within itself, sufficient evidence of a valid agreement ” and must “ have stated the terms of the contract with reasonable certainty, so that the substance of it could be made to appear, and be understood from the writing itself, without having recourse to parol proof ” (Parkhurst v. Van Cortlandt, 1 Johns. Oh. 273, 279 [1814]). This principle has been restated innumerable times in New York and the collateral and negative recitation in the present writing does not meet the standard.
The standard as stated by Chancellor Kent continues as a very modern as well as a generally applied rule for, in the synthesis drawn from hundreds of cases in many jurisdictions, Corpus Juris Secundum states it in almost the same words (37 C. J. S., § 181, p. 666): “ To be sufficient as a memorandum under the statute, a writing must be complete in itself, leaving nothing to rest in parole. It must contain all the essential *578 elements or material parts of the contract evidenced by it.”
As Corbin notes, the writing must state “ the important provisions of the oral agreement that is sought to be enforced ” (2 Corbin, Contracts, p. 739). Illustrative of literal enforcement of the requirement for completeness in the written statement sufficient to enforce the terms agreed upon, under widely differing circumstances, are Matter of Levin (302 N. Y. 535); Standard Oil Co. v. Koch (260 N. Y. 150); 300 West End Ave. Corp. v. Warner (250 N. Y. 221); Poel v. Brunswick-Balke-Collender Co. (216 N. Y. 310), and Drake v. Seaman (97 N. Y. 230).
Even when treated as an admission that some contract has been made, and that is the most that can be made out for plaintiff’s reliance on the writing in this present case, the admission itself, as Judge Lehman noted in Friedman & Co. v. Newman (255 N. Y. 340, 344) must be “ accurate and complete ” in support of the purported oral contract.
Mo doubt contracts sufficiently stated in writing to meet the statutory test can be deduced from collateral writings signed by the party to be charged, such as in wills, affidavits, or agreements, as in this present case, with third parties. But the same requirements for the expression of essential terms of the undertaking apply to such collateral writings.
In treating of the expression of a contract in a will, Corbin notes it is “ the signed recital that a specified contract was made ” that is significant (2 Corbin, Contracts, p. 737). As to the inadequacy of joint wills to effect a contract unless there is a sufficient statement of the agreement, see Edson v. Parsons (155 N. Y. 555). Even the admission of an oral contract in a pleading in an action directly concerned with its enforcement would not, in the opinion of Chancellor Walworth, have deprived a party of a plea of the Statute of Frauds (Cozine v. Graham, 2 Paige Ch. 177).
The recital in the collateral contract in the present case providing for indemnification of a third party and containing neither any agreement with the plaintiff to do or to pay anything, nor, even by remote implication, the terms of any contract with plaintiff is void under the statute.
The order should be affirmed.
*579 Judges Burke, Breitel and Jasen concur with Judge Scileppi ; Judge Bergan dissents and votes to affirm in a separate opinion in which Chief Judge Fuld and Judge Keating concur.
Order reversed, with costs, and case remitted to Special Term for further proceedings in accordance with the opinion herein.