■ In the Matter of Albert Schwartzberg et al., Doing Business as Kings Harbor Care Center et al., Respondents, v David Axelrod, as Commissioner of the Department of Health of the State of New York, Appellant, and Instlcorp, Inc., Intervenor-Respondent. — Appeal from an order of the Supreme Court at Special Term (Doran, J.), entered February 23, 1983 in Albany County, which, in a proceeding pursuant to section 2810 of the Public Health Law, set a fair monthly rental of $12,761 for use of petitioners' facilities. ¶ Petitioners, Albert Schwartzberg and Sigmund Lefkovitz, are the former

owners and operators of two health care facilities, Kings Harbor Care Center and Kings Harbor Manor Facility. In February, 1978, respondent's predecessor as Commissioner of the State Department of Health was appointed as the receiver of these two facilities pursuant to section 2810 (subd 2, par a) of the Public Health Law. On March 29, 1979, petitioners requested a hearing to set a fair monthly rental, and on December 3, 1979, Special Term set an interim rent at $4,381 per month. By decision dated February 17, 1983, Special Term determined that petitioners' total aggregate investment in the two facilities from the day they opened until the date of the appointment of the receiver was $1,594,886. From that sum Special Term deducted reimbursement payments of $906,323 to arrive at a net unreimbursed cost of $668,563, leading to a rental value of $12,761 per month. Special Term ordered respondent to pay petitioner that sum plus interest at the CPLR rate. This appeal by respondent ensued.[*] ¶ A threshold question is whether a statutory amendment, enacted in 1981, limits the recovery of fair monthly rental to that amount which the owners would have been reimbursed under the Medicaid program. That amendment (Public Health Law, § 2810, subd 2, par b, as amd by L 1981, ch 609) in appropriate part states: "the court shall determine a fair monthly rental for the facility * * * which amount shall * * * not exceed the amount which would be reimbursable to the facility under the medical assistance program for real property costs if each patient in the facility were a recipient of medical assistance." We conclude that the language of this statute does indeed limit the fair monthly rental to an amount not greater than that which would have been reimbursable under Medicaid guidelines. Clearly, the Legislature intended to "cap" the allowable recovery by owners of health care facilities at Medicaid spending levels. In arriving at this conclusion, we reject Special Term's holding that the subject statute "deals with a limitation for real property costs, not for determining any fair rental for equipment, fixtures and furniture still owned by the former operators". We hold that the Legislature used the term "real property costs" in its broadest sense, i.e., all expenses connected with the operation of a health care facility. It would make little sense to limit the allowable rental for one aspect of expenses, while allowing the court to exceed Medicaid reimbursement levels for all other expenses. It is our view that the statutory intent is to keep rent at or below Medicaid reimbursement levels so that the receiver need not use funds allocated for operating costs to meet other obligations, thereby reducing services to patients (see Governor's Memorandum, NY Legis Ann, 1981, pp 330-331). Furthermore, the amendment is controlling because it became effective prior to Special Term's decision and order in February, 1983. Accordingly, we conclude that Special Term erred in not computing the fair monthly rental on the basis of the law as it existed in February, 1983 (see *Matter of Hodes v Axelrod,* 56 NY2d 930; *Strauss v University of State of N. Y.,* 2 NY2d 464, app dsmd 355 US 394). ¶ Applying the 1981 amendment of section 2810 (subd 2, par b) to petitioners' aggregate investment credit results in a reduction of that aggregate by the sum of $206,000 pursuant to a $200 to $300 per bed Medicaid ceiling on moveable equipment expenses which was in effect during the years petitioners were operating the facilities. In fact, petitioners concede the application of the ceilings as evidenced by their filed yearly rate sheets which were calculated according to those ceilings. ¶ Next, we conclude that petitioners should have been denied credit in the sum of $19,405 for an unused telephone system which the receiver removed from the facility. Such a system

---

[*] Instlcorp, Inc., a respondent herein, did not file a brief. This corporation holds a mortgage on the real estate upon which the facilities are built and, due to defaults, has been assigned the right to receive the rent due (*Matter of Schwartzberg v Whalen,* 87 AD2d 665).

is unrelated to patient care and there is no approximate Medicaid reimbursement guideline pursuant to which petitioners would be entitled to credit for an unused item. ¶ Finally, while Special Term declined to apply Medicaid guidelines and, in fact, credited petitioners with payments totaling $426,327 for payments made pursuant to a lease of furniture, furnishings and equipment from November 15, 1973 to the date they purchased the equipment for $16,095.76, we are unable to accurately compute petitioners' credit allowance due to the lack of requisite proof in the record. In this connection, we reject respondent's contentions that the ultimate purchase price represents the fair market value of the equipment and that petitioners are not entitled to a credit larger than that sum. As indicated above, the 1981 amendment compels the use of Medicaid guidelines to arrive at the proper amount of credit. As the record now stands, the only testimony concerning an appropriate standard for evaluating the lease-purchase payments was a vague reference to a $1,200 per bed ceiling on moveable equipment. As Special Term noted, respondent could point to no regulation or guideline indicating that such a standard was warranted. ¶ What is "[n]ecessary and reasonable" (10 NYCRR 86-2.22) under the appropriate Medicaid guidelines for lease-purchase payments or, alternatively, for the purchase price when the lessee acquires title by purchase, must be determined by Special Term after the parties have presented more concrete evidence on this point. ¶ Order reversed, on the law, without costs, and matter remitted to Special Term for further proceedings not inconsistent herewith. Mahoney, P. J., Kane, Casey, Weiss and Levine, JJ., concur.

