■ COBBLE HILL NURSING HOME, INC., Appellant, v HENRY AND WARREN CORPORATION, Respondent. (Action No. 1.) HENRY AND WARREN CORPORATION, Plaintiff, v DAVID AXELROD, as Commissioner of the Department of Health of the State of New York, Defendant. (Action No. 2.)—In consolidated actions, inter alia, for specific performance of an option agreement to sell real property, the plaintiff Cobble Hill Nursing Home, Inc., appeals from an order of the Supreme Court, Kings County (Held, J.), dated February 11, 1986, which, upon a stipulation, granted the motion of the plaintiff in action No. 1 for partial summary judgment, and from a judgment of the same court (Held, J.), dated January 20, 1987, which, inter alia, dismissed the complaint in action No. 1.

Ordered that the appeal from the order is dismissed; and it is further,

Ordered that the judgment is affirmed; and it is further,

Ordered that the respondent is awarded one bill of costs.

The appeal from the intermediate order must be dismissed because it was entered upon a stipulation and was subsequently vacated and superseded by the judgment.

The plaintiff instituted action No. 1 to compel the defendant to perform an alleged option agreement to sell a nursing home. It is well settled that in order for a contract for the sale of property to be enforceable, "it must be sufficiently certain and specific so that what was promised can be ascertained" *(Martin Delicatessen v Schumacher,* 52 NY2d 105, 109). Generally, in a contract for the sale of realty, the essential terms that must be contained in a memorandum are the parties, the subject matter and the price *(see, Birnhak v Vaccaro,* 47 AD2d 915; 56 NY Jur, Statute of Frauds, § 197). Parol evidence may not be used to add an essential term *(Matter of Levin,* 302 NY 535; *Keystone Hardware Corp. v Tague,* 246 NY 79 [1927]; *see also,* 4 Williston, Contracts § 567A, at 16 [3d ed]; 56 NY Jur, Statute of Frauds, § 197). However, "[a]n agreement is not unenforceable for lack of definiteness of price if the parties specify a practicable method by which the price can be determined by the court without any new expressions by the parties themselves" *(Matter of McManus,* 83 AD2d 553, 554; 1 Corbin, Contracts §§ 97-98; *cf., Sanitary Farm Dairies v Gammel,* 195 F2d 106).

The instant agreement provided that during the term of the lease "tenant thereunder * * * shall have an option to purchase the premises * * * at any time during said term at a price determined by the [New York State] Department [of Health] in accordance with the Public Health Law and all applicable rules and regulations of the Department". An examination of the Public Health Law and the applicable rules and regulations of the New York State Department of Health fails to reveal any mechanism or procedure by which the New York State Department of Health could determine the purchase price for the subject realty. The provisions relied on by the dissent, i.e., Public Health Law § 2808 (2-a) (d) and 10 NYCRR 86-2.21 (a) (6); (e), do not compel a different conclusion. These provisions merely provide for the establishment of a Medicaid reimbursement rate to the operator of a nursing home, and are not relevant with respect to the purchase price of a nursing home. Since a material element was omitted from the parties' agreement, no valid contract ever came into existence *(see, Martin Delicatessen v Schumacher, supra; Cosmolite Mfg. Co. v Theodus,* 122 AD2d 246). Under the circumstances, the Supreme Court properly va-

cated, *sua sponte,* the stipulation entered into by the defendant in action No. 1 granting the plaintiff's motion for partial summary judgment, and correctly held that the purchase option was unenforceable *(see, Martin Delicatessen v Schumacher, supra; Cosmolite Mfg. Co. v Theodus, supra).* Mangano, J. P., Bracken and Eiber, JJ., concur.

Harwood, J., concurs insofar as the appeal from the order is dismissed, but dissents and votes to reverse the judgment appealed from, reinstate the order, and remit the matter to the Supreme Court, Kings County, for further proceedings in accordance herewith, with the following memorandum: It is my opinion that the Supreme Court improperly vacated a stipulation by which the parties limited the issues to be judicially resolved. It is also my opinion that the Supreme Court erroneously ruled that an option provision contained in a receivership agreement and lease is unenforceable. I therefore dissent and vote to reverse the judgment dated January 20, 1987, and would remit the matter to Supreme Court for determination of the financial issues left unresolved by the parties' on-the-record stipulation.

The defendant The Henry and Warren Corporation is the owner of premises located in Brooklyn, New York, on which its principal, Eugene Hollander, once operated one of several nursing homes. In 1975, Hollander was indicted in both Federal and State courts for crimes stemming from his abuses of the Medicare and Medicaid programs. As he conducted plea negotiations with Federal and State prosecutors, Hollander requested, pursuant to Public Health Law § 2810 (1), that the New York State Department of Health (hereinafter the Department) appoint receivers to operate his nursing homes. Pursuant to that request, the Department and Hollander entered into negotiations for the appointment of the plaintiff, a not-for-profit corporation, as receiver of the nursing home operated on the Brooklyn premises. Receiverships for other nursing homes were also discussed, but the Department ultimately declined to appoint receivers for Hollander's other homes, apparently because, unlike the nursing home on the Brooklyn premises, there was no public need for their continued existence.

On May 4, 1976, Hollander was sentenced by the United States District Court for the Eastern District of New York (Weinstein, J.), upon a plea of guilty, to five years' probation conditioned upon his divestiture of all interests, direct and indirect, in enterprises connected with the care of other people. A $10,000 fine was also imposed. On May 18, 1976,

Hollander was sentenced by the New York State Supreme Court, Kings County (Mollen, J.), upon his plea of guilty, to five years' probation conditioned on his divestiture of all nursing home interests. He was also fined $250,000 and ordered to make restitution of $1,000,000.

On May 17, 1976, two weeks after imposition of the Federal sentence and one day before imposition of the State sentence, Hollander, individually and on behalf of the defendant corporation, entered into a receivership agreement with the plaintiff and the Department concerning the nursing home operated on the Brooklyn premises. Hollander, on behalf of the defendant corporation and the plaintiff, simultaneously executed a five-year lease whereby the plaintiff agreed to pay the defendant corporation, for the use of the premises as a nursing home, annual rent in an "amount to be determined * * * by [the Department] pursuant to all applicable statutes, rules and regulations". Both the receivership agreement and the lease, each of which incorporates the other by reference, afford the plaintiff an option, exercisable at any time during the five-year term of the lease, to purchase the premises "at a price determined by the Department in accordance with the Public Health Law and all applicable rules and regulations of the Department". The manner of payment of the Department-determined purchase price is set forth in detail in the lease and receivership agreement. Moreover, the portion of the receivership agreement governing "Lease and Option to Purchase" provides that "[n]otwithstanding anything to the contrary contained herein or in the Lease, the liability of the [plaintiff] for rent * * * or other liability due to the [defendant corporation] or [Hollander] shall be limited to amounts finally to be determined by the Department * * * to be reimbursable under the Medicaid program". In January 1977 Hollander sought to protect a claimed $10,000,000 investment in two other nursing homes by unsuccessfully suing the Department on account of its refusal to enter into receivership agreements with respect to those nursing homes, which agreements incorporated leases and options to purchase virtually identical to those upon which this litigation is premised.

In October 1979 the plaintiff timely exercised the option to purchase the Brooklyn premises in accordance with the receivership agreement and lease. In November 1979 the Department fixed the purchase price of the premises at $3,046,352 and, in its notice to the plaintiff and the defendant corporation, set forth in detail its computations in arriving at what it termed the "Medicaid allowable transfer price". Its computa-

tion was based on the original "historical" or "initial allowed facility" cost (see, Public Health Law § 2808 [2-a] [d]; 10 NYCRR 86-2.21 [a] [6]), which cost was the basis for the "capital cost component" in the Medicaid real property reimbursement rate determined pursuant to 10 NYCRR 86-2.21 (e), less capital cost payments already made pursuant to the Medicaid reimbursement program. In December 1979 the defendant corporation advised that it had no intention of selling the Brooklyn premises at a "price to be established" by the Department because it regarded as "confiscatory" the "system" whereby price was in effect limited to historical cost less depreciation. In June 1980 the plaintiff commenced an action for specific performance of the option to purchase (action No. 1). In July 1981 after unsuccessfully seeking to have the United States District Court for the Eastern District of New York declare the option provision void as an unlawful taking (see, Henry & Warren Corp. v Whalen, US Dist Ct, ED NY, May 11, 1981, Bramwell, J.), the defendant corporation interposed its answer in this litigation. Although it asserted various affirmative defenses, the Statute of Frauds was not among them. It did, however, affirmatively assert that the price set by the Department was not determined in accordance with the Public Health Law. In its counterclaims, the defendant corporation sought declarations that the option clause is unenforceable because the Public Health Law contains no provision authorizing the Department to set purchase prices for nursing homes, that the lease pursuant to which the plaintiff has occupied the premises since 1976 is void because there are no statutes, rules, or regulations governing "rent", and that it is entitled to the fair rental value of the premises for the period from 1976. It also sought money judgments for sums claimed to be due pursuant to an escrow agreement and for sums allegedly due pursuant to the receivership agreement for supplies left at the premises. The defendant corporation also commenced a separate action (action No. 2) against the Commissioner of the Department seeking declarations that the Department must fix rent and purchase price in amounts not less than the fair rental and fair market values. That action was subsequently consolidated with action No. 1.

In 1985, the plaintiff sought summary judgment dismissing the defendant corporation's affirmative defenses and counterclaims and directing that it convey title in accordance with the receivership agreement and lease. The defendant corporation's terse opposition to the motion consisted of its attorney's assertion that more disclosure was needed as to the method of

fixing price. However, on the motion's final submission date of February 11, 1986, counsel for the plaintiff, the defendant corporation and the Commissioner appeared before Supreme Court, Kings County, and placed on the record a stipulation by which it was agreed that the plaintiff's motion for summary judgment should be granted "except [that] all items financial in nature are reserved for [the] court. Said items of financial nature are referred to a conference between the Department * * * and * * * defendant [Corporation] to resolve. If said items are not resolved, the items of financial nature are reserved for determination by [the] court". Through that stipulation, the parties specified that the issue "is the prior recommended purchase price of the property and the methodology used to determine said price by the Department * * * [o]ther items at issue are all financial items set forth in the counterclaims of the defendant [Corporation]". According to the stipulation, "[i]n the event an agreement is not reached [with regard to all financial matters] the parties shall appear before the court in order to commence a hearing on all issues financial in nature". The parties additionally specified that "[a]ll other issues of law have been resolved by the granting of this motion for summary judgment [that] the only issues left to be resolved as to all parties are financial matters [and that] the granting of this motion for summary judgment constitutes resolution of all matters at law with regard to this case". In the order appealed from dated February 11, 1986, the Supreme Court granted the plaintiff partial summary judgment in accordance with the "stip[ulation] on record".

The parties could not agree on the "financial" matters apparently because of a Department error as to "historical cost". The parties thus appeared for the hearing contemplated by the stipulation. During the course of opening remarks, the Supreme Court interrupted the plaintiff's counsel to assert that, since the making of the stipulation, it had learned that the defendant corporation alleged there were no regulations governing the fixation by the Department of "price", notwithstanding that counsel made clear that the same regulations and methodology used to determine "price" were used to determine "rent". The Supreme Court then *sua sponte* vacated the stipulation and proceeded to hear oral argument as to whether the option was enforceable. Finding there was an "ambiguity", but refusing the plaintiff the opportunity to prove that the parties intended "price" would be fixed by the Department in accordance with the rate at which a nursing

home operator would be reimbursed for acquisition costs as set forth in the Medicaid regulations, the court held that "the contract" was "void for vagueness". By judgment dated January 20, 1987, the Supreme Court dismissed the complaint, presumably pursuant to CPLR 3212 (b), and severed and continued the defendant corporation's counterclaims and the "action" against the defendant Commissioner.

I agree with the majority that the plaintiff's appeal from the order dated February 11, 1986, granting it partial summary judgment in accordance with the on-the-record stipulation must be dismissed. The plaintiff, like the other parties which consented to the order, is not aggrieved by it *(cf.,* CPLR 5511). However, I cannot agree that the judgment should stand.

In holding the option clause unenforceable, the majority relies on the well-established but general rule that, in order to be binding, a contract must set forth all essential terms, including either the price or "a practicable method by which the price can be determined by the court without any new expressions by the parties themselves" *(Matter of McManus,* 83 AD2d 553, 554). In so doing, the majority overlooks the fact that the option provision is not a mere agreement to agree. It calls for no new expression of intent by the parties to the transaction but rather expresses their intent that price be fixed by a third party. I am aware of no statutory or judicial rule of law which prohibits parties from contractually agreeing that price shall be fixed by others *(cf.,* CPLR 7601; *Matter of Penn Cent. Corp. [Consolidated Rail Corp.]* 56 NY2d 120), even where the sale of realty is involved *(see, Matter of New York, Lackawanna & W. R. R. Co.,* 98 NY 447). And assuming that parties who contractually elect to have price determined by another are nonetheless required to set forth a formula by which the designated third party is to fix price *(but cf.,* CPLR 7601; *Matter of New York, Lackawanna & W. R. R. Co., supra),* the plaintiff and the defendant corporation have, by contract, set forth a "practicable method" by which the designated third party—the Department—was to determine price, i.e. by reference to the Public Health Law and the regulations promulgated pursuant to it.

It is true, as the Supreme Court and the defendant corporation observed, that the Public Health Law and the regulations do not specifically authorize the Department to fix the "purchase prices" of nursing homes any more than they authorize the Department to fix the rent an operator must pay to an owner for use of premises on which a nursing home is oper-

ated. But apart from the fact that such authority has here been conferred on the Department by contract *(see, Henry & Warren Corp. v Whalen,* US Dist Ct, ED NY, May 11, 1981, Bramwell, J., *supra),* I cannot agree with the majority that there is no "procedure" by which the Department can determine the "option price". The Public Health Law contemplates "Medicaid" reimbursement to nursing home operators for "real property costs" *(see,* Public Health Law § 2808), including reasonable rent *(see,* 10 NYCRR 86-2.21 [c]) and, where the operator is the owner, the reasonable costs of acquisition, e.g., amortization, interest and "return of equity" *(see,* 10 NYCRR 86-2.21 [e]). The fact that one of the bases for computing reimbursement amounts for real property costs is "historical cost" as defined in the regulations, the fact that additional complicated criteria are involved, and the fact that the reimbursement amount arrived at may not equal fair rental or fair market value do not support the majority's implicit conclusion that no criteria exist *(see, Hurlbut v Axelrod,* 101 AD2d 999; *Matter of Schwartzberg v Axelrod,* 100 AD2d 694). The regulatory criteria for establishing reimbursement amounts for amortization, interest and return of equity provide the Department with a practicable method for determining price and, in my view, the parties, by the option provision, expressed their intent that it use that method for doing so *(cf., Martin Delicatessen v Schumacher,* 52 NY2d 105, 111).

Any doubts as to whether the defendant corporation, by contract, afforded the plaintiff an option to purchase the Brooklyn premises at a price which conformed with the acquisition costs the plaintiff could recoup pursuant to Public Health Law § 2808 and 10 NYCRR 86-2.21 are rendered irrelevant by the stipulation pursuant to which the plaintiff was granted partial summary judgment. "Parties by their stipulations may in many ways make the law for any legal proceeding to which they are parties, which not only binds them, but which the courts are bound to enforce. * * * [a]ll such stipulations not unreasonable, not against good morals, or sound public policy, have been and will be enforced" *(Matter of New York, Lackawanna & W. R. R. Co., supra,* at 453; *see also, Salesian Socy. v Village of Ellenville,* 41 NY2d 521; *Nishman v DeMarco,* 76 AD2d 360). Moreover, a stipulation between counsel which is spread on the record is as binding as a written contract *(cf.,* CPLR 2104). Only where there is cause such as fraud, collusion or mutual mistake which is sufficient to vacate a formal contract will a party be relieved of the consequences of a stipulation made during the

course of litigation *(see, Hallock v State of New York,* 64 NY2d 224, 230).

There is no claim by the defendant corporation, and no hint in the record, that the February 11, 1986 stipulation was the product of fraud, collusion or mutual mistake. I can discern no legal or public policy considerations which justify a failure to enforce a stipulation by which the parties effectively limited the issues that the Supreme Court, and this court on appeal, can determine *(see, Salesian Socy. v Village of Ellenville, supra; Nishman v DeMarco, supra).* And although the financial questions of whether the Department accurately determined price in accordance with criteria set forth in its own regulations, whether the plaintiff owes the defendant corporation sums pursuant to a tangential escrow agreement, and whether the plaintiff owes the defendant corporation sums for supplies the latter left at the Brooklyn premises are to be judicially resolved, the stipulation makes clear that issues of law, e.g., the enforceability of the purchase option, are no longer open to question, either by the parties or by the courts.

The majority concludes that Supreme Court properly vacated, *sua sponte,* the stipulation dated February 11, 1986. Its apparent rationale is that since, in its view, an essential element is missing from the underlying receivership agreement and lease, we need not heed a subsequent contract. However, "[c]ourts have long favored the fashioning of stipulations by opposing counsel as effective and enforceable means for expediting trials by permitting them to focus on the controverted issues" *(Salesian Socy. v Village of Ellenville, supra,* at 525-526). It is my view that we cannot ignore a stipulation by which the parties charted their own procedural course *(see, Salesian Socy. v Village of Ellenville, supra)* and coincidentally reasserted their intent that the Department fix price in accordance with the objective Medicaid reimbursement standard *(see, Martin Delicatessen v Schumacher, supra,* at 110). It is also my view that we are bound by principles of contract law, reasonableness and sound public policy to enforce it *(see, Matter of New York, Lackawanna & W. R. R. Co.,* 98 NY 447, *supra).*

Whether execution of the receivership agreement, lease and option to purchase satisfy the divestiture requirements on which Hollander's apparently concurrent and now-expired sentences of probation were conditioned is beyond the scope of this appeal. It is evident, however, that the lease and option to purchase which the defendant corporation, and through it, Hollander, now seeks to avoid are conditions which made the

receivership requested by Hollander acceptable to the plaintiff and the Department (see, Public Health Law § 2810 [1]). And although the lease and option provisions apparently work to deprive Hollander of the opportunity of pocketing fair rental and fair market amounts, the agreement "package" nonetheless affords the defendant corporation and, through it, Hollander, some return on their "investment", in apparent contrast to investments in nursing homes which the Department declined, over Hollander's objection, to salvage. By ignoring the February 11, 1986 stipulation, by ruling unenforceable the option provision of the receivership agreement and lease, and by dismissal of the complaint, the defendant corporation and, through it Hollander, are now also afforded the opportunity, albeit delayed, of reaping from a "fair market" sale of the premises profits which both State and Federal authorities determined that Hollander was not entitled to enjoy when they directed him to divest himself of his nursing home interests. By severance and continuation of the defendant corporation's counterclaims and its claim against the Commissioner, the defendant corporation and, through it, Hollander, are afforded the opportunity of litigating whether the plaintiff is liable for fair rental and fair market value, notwithstanding that, by contract, plaintiff's "liability * * * for rent * * * or other liability * * * shall be limited to amounts finally * * * determined by the Department * * * to be reimbursable under the Medicaid program". In my view, the judgment appealed from is contrary to established principles of contract law and sound public policy. I therefore vote to reverse it.