■ COBBLE HILL NURSING HOME, INC., Respondent-Appellant, v HENRY AND WARREN CORPORATION, Appellant-Respondent. (Action No. 1.) HENRY AND WARREN CORPORATION, Appellant-Respondent, v DAVID AXELROD, Respondent-Appellant. (Action No. 2.)— [601 NYS2d 334] —In consolidated actions, *inter alia,* for specific performance of an option to purchase real property, Henry and Warren Corporation appeals from stated portions of an order and judgment (one paper) of the Supreme Court, Kings County (Held, J.), dated December 18, 1990, as confirmed the report of the Judicial Hearing Officer (Kramer, J.H.O.), dated October 5, 1990, which reduced the purchase price and failed to grant the defendant interest, and Cobble

Hill Nursing Home, Inc., and the defendant David Axelrod, Commissioner of the State of New York Department of Health, separately cross-appeal from so much of the same order and judgment, and separately appeal from so much an order of the same court dated November 28, 1990, as denied Cobble Hill Nursing Home, Inc., recovery of real estate taxes, rents, and profits.

Ordered that the appeals from the order dated November 28, 1990, are dismissed, without costs or disbursements; and it is further,

Ordered that the order and judgment is modified, on the law, (1) adding a provision thereto granting Cobble Hill Nursing Home, Inc., an award of damages for rent and profits paid after December 31, 1979, in excess of that applied against the purchase price, with interest, (2) adding a provision thereto granting Cobble Hill Nursing Home, Inc., an award of damages for real estate taxes paid on the property after December 31, 1979, and (3) adding a provision thereto granting Henry and Warren Corporation an offset for interest on the purchase money from January 1, 1980; as so modified, the order and judgment is affirmed insofar as appealed and cross-appealed from, without costs or disbursements, and the matter is remitted to the Supreme Court, Kings County, for entry of an appropriate amended order and judgment and for further proceedings consistent herewith.

The appeals from the intermediate order must be dismissed because the right of direct appeal therefrom terminated with the entry of order and judgment in the action (see, Matter of Aho, 39 NY2d 241, 248). The issues raised on the appeals from the order are brought up for review and have been considered on the appeal from the order and judgment (see, CPLR 5501 [a] [1]).

Cobble Hill Nursing Home, Inc. (hereinafter Cobble Hill) was appointed as the receiver for the nursing home owned by Henry and Warren Corporation (hereinafter Henry and Warren). Pursuant to the receivership agreement, Cobble Hill and Henry and Warren entered into a lease of the subject premises. The lease, by incorporating by reference the receivership agreement, granted Cobble Hill the option to purchase the premises during the term of the lease at a price to be determined by the Department of Health in accordance with the Public Health Law and the Department's rules and regulations known as "the Medicaid allowable transfer price".

In 1979, during the term of the lease, Cobble Hill elected to

exercise its option to purchase the subject premises and requested the Department of Health to set the purchase price. The Department calculated the Medicaid allowable transfer price for the premises as of January 1, 1980, at $3,046,352. However, Henry and Warren refused to sell the premises at the price set by the Department of Health. Thereafter, Cobble Hill commenced Action No. 1 for specific performance of the option to purchase the real property and Henry and Warren counterclaimed for rescission or adjustment of rent payments to the fair market value. Henry and Warren also separately sued the Department of Health and the Commissioner of Health challenging, *inter alia,* the determination of the price.

The Supreme Court dismissed the complaint in Action No. 1, finding that the option agreement was unenforceable for failure to specify a method by which the price could be determined. This Court, by a divided vote, affirmed *(Cobble Hill Nursing Home v Henry & Warren Corp.,* 144 AD2d 518). However, the Court of Appeals reversed the order of this Court, finding the price term was sufficiently definite, since it provided that the Department of Health would set the price pursuant to the Public Health Law and all applicable rules and regulations, which provided a method of calculating the price *(see, Cobble Hill Nursing Home v Henry & Warren Corp.,* 74 NY2d 475, *cert denied* 498 US 816). The Court of Appeals observed "[t]hat the Department could indeed calculate a price by reference to its rules and regulations is evidenced by the fact that it did exactly that. As reflected in its letter fixing the price, the Department followed its regulations by referring to historical cost, then reducing that figure by the amount paid by the Medicaid program as capital cost reimbursement as of January 1980, and announcing the option price" *(Cobble Hill Nursing Home v Henry & Warren Corp.,* 74 NY2d, at 484, *supra).* Thereafter, the matter was remitted to the Supreme Court for further proceedings.

Cobble Hill moved in the Supreme Court for entry of an order and judgment of specific performance and for an accounting with respect to the adjustments of the purchase price and damages it suffered as a result of Henry and Warren's delay in conveying the premises. The Supreme Court granted the motion and referred the matter to a Judicial Hearing Officer. The Judicial Hearing Officer, after a hearing, issued a report recommending a purchase price as of December 31, 1989, of $1,635,076. The Judicial Hearing Officer calculated the Medicaid allowable transfer price by reducing the historical cost of the property by the capital cost reimbursements

through December 31, 1989. The Judicial Hearing Officer also recommended that the Supreme Court deny the plaintiff's claims for rent, profits, and real estate taxes and the defendant's claim for interest on the purchase money. The Supreme Court confirmed the Judicial Hearing Officer's findings by an order dated November 16, 1990. By an order and judgment entered December 18, 1990, the Supreme Court, *inter alia,* directed specific performance of the option agreement at the purchase price of $1,635,076.

Henry and Warren appeals from the order and judgment insofar as it reduced the $3,046,352 purchase price set by the Department as of January 1, 1980. It contends that the Court of Appeals set the purchase price at $3,046,352, and thus the Supreme Court was without jurisdiction to reduce the price. However, the Court of Appeals did not determine the purchase price and merely held that the price term of the option agreement was definite, such that the agreement was enforceable and Cobble Hill was entitled to specific performance. Therefore, the Supreme Court did not err in adjusting the purchase price as of January 1, 1980, by capital cost reimbursements received by Henry and Warren since that date *(see,* Public Health Law § 2808; 10 NYCRR 86-2.21 [c], [e]).

We note that the purchase price as of January 1, 1980, as set by the Department of Health was erroneously calculated as $3,046,352. Based on the testimony of a Department of Health witness, the purchase price, as of January 1, 1980, was $3,046,442.

The uncontested evidence established that between December 31, 1979, and December 31, 1989, Henry and Warren received additional capital cost reimbursements for amortization and return of equity, which reduced the Medicaid allowable transfer price under 10 NYCRR 86-2.21 (c) and (e), in the amount of $1,411,366. Therefore, the Supreme Court did not err in concluding that the Medicaid allowable transfer price as of December 31, 1989, was $1,635,076.

However, we find that the Supreme Court erred in denying Cobble Hill damages for rent, profits, and real estate taxes, and in denying Henry and Warren an offset for interest on the purchase money held by Cobble Hill. It is well established that a purchaser of real property who is awarded specific performance, may also recover damages sustained by him or her as a result of the seller's unreasonable and unwarranted delay in conveying the property *(see, Taylor v Taylor,* 43 NY 578; *Cooperstein v Patrician Estates,* 117 AD2d 774, 775; 91 NY Jur 2d, Real Property Sales and Exchanges, § 211, at 501).

Moreover, the seller, as trustee of the real property for the benefit of the purchaser, is liable for rents and profits derived from the property during the delay, and the purchaser, as trustee of the purchase money, if not paid, for the benefit of the seller, is liable for interest accruing on the purchase money (see, Worrall v Munn, 38 NY 137; 4200 Ave. K Realty Corp. v 4200 Realty Co., 123 AD2d 419). The purchaser may elect either to pay the interest on the purchase money retained and recover rents and profits from the seller, or allow the seller to retain the rents and profits and be exempt from paying interest (see, Worrall v Munn, supra; Perfetto v Scime, 182 AD2d 1126, 1127; Matter of 50-05 43rd Ave. [Canfield Props. Corp.—Harris], 271 App Div 44, 49-50; see also, Annotation, Specific Performance: compensation or damages awarded purchaser for delay in conveyance of land, 7 ALR2d 1204, 1212; 91 NY Jur 2d, Real Property Sales and Exchanges, § 211, at 501).

Therefore, in the present case, since Cobble Hill elected to recover rents and profits and pay Henry and Warren interest on the purchase money, the Supreme Court erred in denying that relief. However, Cobble Hill is only entitled to that portion of the rent not attributable to amortization and return of equity, which reduced the purchase price. To that end, the evidence established that Henry and Warren received $4,071,549 in rent since January 1, 1979 and that amortization and return of equity accounted for $1,411,366 of the rent. Thus, Cobble Hill is entitled to recover $2,660,183 of the rent. Further, Henry and Warren is entitled to an offset for interest on the purchase money held by Cobble Hill since January 1, 1980. The interest should be calculated only on the purchase money held by Cobble Hill. As Cobble Hill paid rent, the purchase money which it held was reduced by that portion of the rent attributable to amortization and return of equity, which was applied against the purchase price. Cobble Hill is also entitled to interest on the rent which was in the possession of Henry and Warren and which did not reduce the purchase price.

We also find that Cobble Hill is entitled to recover the real estate taxes on the property that it paid during the delay. As a not-for-profit corporation organized to operate a residential health care facility, Cobble Hill was mandatorily exempt from real estate tax on any real property which it owned (see, RPTL § 420-a [1] [a]; Kahal Bnei Emunim & Talmud Torah Bnei Simon Israel v Town of Fallsburg, 78 NY2d 194). Thus, had Henry and Warren transferred the property in 1979,

Cobble Hill would not have had to pay the real estate taxes on the property. Therefore, the damages to Cobble Hill naturally flowed from Henry and Warren's breach. Moreover, the result was within the contemplation of the parties, since the lease and the receivership agreement noted that Cobble Hill was a not-for-profit corporation organized to operate the nursing home *(see,* 36 NY Jur 2d, Damages, § 39, at 66-67). Further, although Cobble Hill was reimbursed by the State for the real estate taxes, Henry and Warren should not be allowed to utilize a "pass-on" defense, since such a defense would allow those with contracts with Medicaid-funded facilities to breach their contracts with impunity *(see, Orange & Rockland Utils. v New England Petroleum Corp.,* 60 AD2d 233). Bracken, J. P., O'Brien, Ritter and Copertino, JJ., concur.